when the summons was published, pursuant to the order of publication against Thomas Brodie, the name of the first defendant, Clark, and the name of Thomas Brodie, alone appeared as defend-. ants; and, as there were other defendants, it is claimed that there was no proper publication. But there was a substantial compliance with the requirement of the law. The object of the summons was to give notice to the defendant Thomas Brodie that the action was pending against him. All that was necessary to give that notice was done. The name of the particular defendant summoned was given. The place at which his answer or notice of appearance must be served was mentioned in the publication. Whatever was requisite to put him upon inquiry was contained in the summons, as printed, and nothing more was necessary than that. A literal and exact copy was not required, if the whole of the summons, specifically directed to him as a defendant, and his name appearing therein as a defendant, was published as appears to have been the case here. It is unnecessary to consider the other questions raised on this submission. The effect of the strict foreclosure action becomes unimportant, in view of what has been previously said upon the other objections.

We are of the opinion that the title offered by the plaintiff was marketable, and free from such a doubt, and that the defendant should be required to accept the deed tendered by the plaintiff, conveying the premises under the contract, without costs, as they have been waived by the stipulation.

RUMSEY, WILLIAMS, and INGRAHAM, JJ., concur.

VAN BRUNT, P. J. I dissent upon the question of costs. Costs are in the discretion of the court, and this discretion cannot be taken away by stipulation of the parties. Costs should be allowed to the plaintiff.

---

### In re OGSBURY'S ESTATE.

(Supreme Court, Appellate Division, First Department. June 19, 1896.)

LEGACY TAX—TRANSFER BY TESTATOR DURING LIFETIME.

Testator transferred all his property to a trustee by a deed by which it was agreed that the trustee would manage the property and pay him the income for life, and at his death transfer the property to such persons as he should by his will, or an instrument in the nature thereof, name, and, in default of such will, to such persons as should be entitled as next of kin. Held, though the legal title passed to the trustee under such deed, the whole interest in the property remained in testator, and passed by his will, and the property was therefore taxable, under Laws 1887, c. 713, providing that the grant of any property, to take effect in possession or enjoyment after the death of the grantee, shall be subject to a tax.

Appeal from surrogate's court, New York county.

Appraisal of the property of William M. Ogsbury, deceased, under Laws 1887, c. 713, entitled "An act to tax gifts and collateral inheritances in certain cases." From an order affirming a former order, which fixed the respective interest of the beneficiaries in

the estate of deceased, and the amount of the tax to be paid thereon, William L. Ogsbury, a nephew of decedent, appeals.  Affirmed.

On the 5th day of November, 1885, the deceased executed and delivered to the United States Trust Company, of New York City, an indenture wherein it was recited that the deceased was possessed of the personal property therein described, and desired to be relieved of the management thereof, and to secure the benefits of the income thereof, as a continual support during his natural life, and to secure the property to his devisees or next of kin as therein mentioned, and wherein, in consideration of seven dollars, and for the purpose therein set forth, he granted, sold, and conveyed to the trust company, and its successors and assigns, personal property therein described, consisting of bonds and stocks, and amounting to about $25,000, upon trust to receive the income and profits thereof, to pay the reasonable charges of the trust company for executing the trust, and to apply the remainder of such income and profits to the use of the deceased during the term of his natural life, and, upon his death, to assign, transfer, and convey the property, and such other property as the trust company may then hold in lieu thereof, to such person or persons, and in such shares or proportions, as deceased should, in and by his last will and testament, or instrument in the nature thereof, name, appoint, and direct, and in default of such will and testament legally made, and so far as the same should not extend, to such person or persons "as shall be entitled thereto, as next of kin of deceased," under the laws of the state of New York then in force, for the distribution of the estates of persons dying intestate, and wherein the deceased empowered the trust company to sell any of the securities therein described, and reinvest the proceeds thereof in other good and approved securities, at any time the trust company should deem it necessary, proper, or to the advantage of the deceased to make such sales and reinvestment, such new investments to include bonds of railroad companies that had not made default in the payment of interest within the eight years last past, secured by mortgage upon completed railroads, and also authorized and empowered the trust company to do any other act which might be necessary and proper for the care, management, protection, and preservation of the property described therein, or any such new investments.  The trust company united in the indenture, accepting the trust created therein, and covenanting to faithfully execute the same.  Thereafter, and March 10, 1888, the deceased made a will, wherein, among other things, he directed that the property held by the trust company under the indenture of November 5, 1885, at the time of his death, should be transferred and conveyed by the trust company, $1,000 to each of his three aunts named therein, $1,000 to a Mr. Martin, and $2,000 to a Mrs. Youngs, and the balance to his nephew, the appellant herein; to have and hold the same absolutely. Thereafter, and April 19, 1889, the deceased died, and his will was admitted to probate.  The appraiser appointed by the surrogate decided that the residue of the property held in trust, that went to the appellant, amounted to $19,491.42.  He also stated in his report that the executor under deceased's will claimed the trust property did not belong to deceased, and was not subject to taxation, but he had disallowed the claim, and that the executor offered to prove by parol evidence that the indenture of November 5, 1885, was not made in contemplation of the death of the grantor, and he held the indenture and will were the best evidence of the intent of the grantor and testator, and rejected the evidence.  There does not appear to be any proof in the papers that the property described in the indenture of November 5, 1885, was actually delivered to the trust company, or that the trust company executed the trust during the lifetime of the deceased, or made any transfers of the property, after the death, to the beneficiaries named in the will, except such inference as may be drawn from the indenture and will themselves.  The report of the appraiser was filed, and the surrogate made the orders hereinbefore referred to, wherein, among other things, he determined that the property referred to in the indenture was taxable under the laws of the state hereinbefore referred to.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Eugene L. Bushe, for appellant.
Emmet R. Olcott, for respondent.

WILLIAMS, J.   We suppose it should be assumed, for the purposes of this appeal, that the property in question was actually delivered to the trust company at the time of the execution and delivery of the indenture, November 5, 1885; that the trust company executed the trust according to its terms, during the lifetime of the deceased; and that, after the death, the trust company transferred the property to the persons named in the will, pursuant to the terms of the indenture and of the will.   We find nothing in the record to support the contention of the appellant that the report of the appraiser does not accurately express the ruling made by him upon the question of the intent with which the indenture of November 5, 1885, was made.   It does not appear that the executor offered to show the precise reason for making the indenture, or that the appraiser ruled out the evidence, not upon the grounds of its incompetency or immateriality, but upon the ground that the onus probandi to show the intent with which the indenture was made rested upon the comptroller, or that the point that the record was incorrect upon this question was urged upon the surrogate before the report was confirmed.   So far as the record discloses, the only offer made by the executor was to prove by oral testimony that the indenture was not made in the contemplation of the death of the grantor, or to take effect after his death, and the only ruling made was that the indenture and the will were the best evidence of the intention of the grantor and testator, and rejecting the oral testimony.

We cannot assume that the record is incorrect in the absence of any evidence to that effect.   Nor can we assume that any point was made before the surrogate as to the incorrectness of the report, in the absence of anything in the record to show that any such point was made.   The inference to be drawn from the indenture and will is that the grantor intended to transfer the legal title to the property to the trust company at the time the indenture was executed and delivered, upon the trust specified therein, which was to hold the property during the lifetime of the deceased, and pay the income over and above the charges of the trust company executing the trust to the deceased for his use during his lifetime, and, at his death, to transfer the property itself to the persons referred to therein.   We do not see how proof could be made of any different intent.   This intent was plainly expressed and carried out by the trust company, and we think no error was committed by the appraiser in ruling as he did.   What the legal effect of such intent, so expressed, was, is the only question left to be determined.   Whether the indenture was made in contemplation of death, or to take effect, in whole or in part, after death, for the purpose of the tax, is rather a question of law than of fact.

Acts 1885, c. 483, as amended by Laws 1887, c. 713, which was in force at the time of the death of the deceased, provided:

"Section 1. After the passage of this act all property which shall pass by will, or by the intestate laws of the state, from any person, who may die seised or possessed of the same, * * * or any interest therein or income therefrom, which shall be transferred by deed, grant, gift or sale made, or intended to take effect in possession or enjoyment after the death of the grantor or bargainor to any person or persons, or to any body politic or corporate in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled in possession or expectancy to any property or the income thereof, * * * shall be and is subject to a tax," etc.

The question is whether, under this statute, the principal of this property, which concededly came to the appellant and others after the death of the deceased, was taxable under this statute, considering the way in which it was transmitted from the deceased to these persons, and whether the property really passed by will or by the indenture. The property in question was wholly personal in its character. No question is made by either party as to the legality of the trust established by the indenture in question. The only question we are interested in is as to the effect of the indenture upon the question of taxation under the statute. The claim made by the appellant is that, by the indenture, the absolute title passed to the trust company at the time the indenture was executed and delivered, and that no interest therein remained in the deceased or passed under the will. These questions are not free from difficulty, but it seems to us that it can hardly be said that, under the indenture, all interest in the property which finally came to the appellant passed to the trust company at the time the indenture was executed and delivered, and nothing remained in the deceased, so as to pass under his will. It was a mere naked trust, in which no third parties had any interest whatever. The trust company had no interest in the property, but only an interest in the income, for the purposes of compensating itself for its services in the execution of the trust. While the technical legal title may be said to have passed under the indenture to the trust company, still the property and all interest therein really remained in the deceased, as much as though the indenture had not been made or delivered.

It is not true that the trust was irrevocable. It is only in cases where other parties besides the person creating the trust have an interest therein that the trust becomes irrevocable. We see nothing that would have prevented the deceased from revoking the trust if he had desired to do so. No one had any interest to prevent his doing so. The appellant and other appointees under his will had no such interest, because the deceased could have revoked this will, and made another in favor of other parties, if he desired to do so. His next of kin referred to in the indenture had no such interest, because the deceased had power by will to secure the property to others, and entirely exclude them from all interest therein. The property was, to all intents and purposes, the property of the deceased, and subject to his sole power of disposition at any time before his death, or by will to take effect at his death, the same as if this indenture had not been made.

In Trust Co. v. Livingston, 133 N. Y. 125, 30 N. E. 724, the testator executed and delivered to the trust company, plaintiff, a deed of trust of real and personal property, with directions to pay the income to himself during his life, and upon his death to convey the property to such persons and in such shares as he should designate by his last will, and, in default of such appointment, to his heirs at law and next of kin. By his will, he gave all his estate, real and personal, which he owned or was in any manner entitled to, to an uncle. There was no other execution of the power conferred by the trust deed, aside from this general provision of his will; and the court held this amounted to an execution of the power, Andrews, J., saying in his opinion:

"The testator owned the property embraced in the trust prior and up to the time the deed was executed. He reserved therein the beneficial interest during his life, and a power of appointment by will. . This was little less than ownership, and the statute, for the purpose of construing a disposition by will under a power of appointment, treats the subject of the power as the property of the donor of the power, and conclusively infers an intention in a testator to execute the power where the will disposes of all his property, and the inference is not rebutted by express language or necessary implication," etc.

It is true this decision was made under section 126 of the statute of powers, which provides that:

"The lands embraced in a power to devise shall pass by will purporting to convey all the real property of the testator unless the intent that the will shall not operate as an execution of the power shall appear expressly or by necessary implication."

But the trust was the same precisely as in the case at bar, except that it related to real as well as personal property; and the theory of this decision was that, though the power was not by the will expressly executed, still it was effectually done, because really the property covered by the trust deed remained the property of the testator, and he had an interest as owner therein, notwithstanding the trust. The property was held to have passed under the will, which merely disposed of all the property which he owned or was entitled to.

We think the deceased retained, after the execution and delivery of the indenture in question, the ownership of, or an interest in, the property which passed to the appointees under the will, so as to render it taxable under the provisions of the statute. The indenture made and delivered by the deceased to the trust company was, in effect, but little more than a power of attorney. Possession of, and the formal legal title to, the property, was presumably given to the trust company, to enable it to collect the income and profits, and to pay them to deceased during his lifetime, and after his death to deliver the property to his appointees named in the will, or, in default thereof, to next of kin. There was no gift to the trust company, for there was no irrevocable disposition or delivery of the property to it. It never became owner of the property. A fair construction should be given to the statute, and not a forced or technical one. No opportunity should be given parties to evade

the statute, and prevent the taxation of the property fairly within its provisions, and we are unwilling to give any construction to the statute which will aid parties in the evasion of the law.

The order appealed from should be affirmed, with costs. All concur.