## GWINN v. COMMISSIONER OF INTERNAL REVENUE.*

No. 6489.

Circuit Court of Appeals, Ninth Circuit.

Jan. 5, 1932.

*Rehearing denied February 23, 1932.

Frank I. Ford, of San Francisco, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Erwin N. Griswold, Sp. Asst. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

JAMES, District Judge.

By this proceeding there is brought here for review a decision of the Board of Tax Appeals, wherein it was determined that one-half of the value of certain real property, held by M. A. Gwinn and petitioner in joint tenancy at and prior to the death of M. A. Gwinn, was subject to an estate or succession tax under the provisions of the Revenue Act of 1924, approved June 2, 1924 (43 Stat. 303, § 300 et seq.). The joint tenancy was created in June, 1915. Petitioner and M. A. Gwinn, his mother, contributed equal amounts to the purchase of the property. M. A. Gwinn died October 5, 1924. The Revenue Act provides (section 302, subd. (e), 26 USCA § 1094 note) that the estate tax shall be determined by including " * * * the extent of the interest therein held as joint tenants by the decedent and any other person, * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been

at any time acquired by such other person from the decedent for less than a fair consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person. * * *"

By subdivision (h) of the same section (26 USCA § 1094 note), the provisions quoted are made to apply to all rights and interests, "whether made, created, arising, existing, exercised or relinquished before or after the enactment of this act."

Two questions arise: (1) At the death of his cotenant, did petitioner, by reason of such demise, succeed to or acquire any additional right or interest in the property theretofore held in joint tenancy in 1915? (2) Did the fact that the joint tenancy was created prior to the adoption of the act of 1924 relieve it from taxation?

The decision of this court in Carter v. English, 15 F.(2d) 6, is relied upon by petitioner as complete authority sustaining his contentions. Carter v. English took as the ground of decision that the California Supreme Court had, in Estate of Gurnsey, 177 Cal. 211, 170 P. 402, 404, held that a joint tenant took his whole estate at the time of the conveyance, and no interest could be taxed under a law passed after the creation of the tenancy; that the estate had completely vested prior to the date of the law. While we think that the decision has been completely overturned by later decisions of the Supreme Court of the United States which are hereinafter cited and quoted from, it seems proper to consider just what limitations, if any, the California statute has placed upon a joint tenancy interest. The California Supreme Court in the Gurnsey Case held that "each tenant was seised of the whole estate from the first, and no change occurred in his title on the death of his cotenant."

Section 683, Civil Code of California, in defining joint tenancy, makes no change in the character, attributes, or incidents which the common law assigned that species of property holding. The unities of title, interest, and possession remain affixed. Under the common law, one of such tenants had not the right to the exclusive possession of the property, and that right accrued to him only upon the death of his cotenant; and his cotenant might destroy the joint tenancy during his lifetime by transfer of his interest; he could also cause partition of the property to be decreed in proportion to interests. Mr. Kent, in his Commentaries (volume 4, p. 360, 14th Ed.), treating of the subject of joint tenancy, says: "A joint tenant in respect to his companion is seized of the whole; but for the purposes of alienation * * * he is seized only of his individual part or proportion."

In Green v. Skinner, 185 Cal. 435, 197 P. 60, 61, it is said: "It is the law that a joint tenancy may be severed and ended by a conveyance by one of the tenants of his share."

The California court in the Gurnsey Case made an important reservation in its holding when it said: "The statement in McDougald v. Boyd, 172 Cal. 753, 159 P. 168, that the act of 1911 did not undertake to impose such tax upon the 'right accruing to a surviving joint tenant upon the death of his cotenant' is, in our opinion, correct."

It is made very plain that the California courts do not view a joint tenancy as conferring upon each tenant complete and irrevocable rights in the joint estate from the date of the inception of the relation. Rights not theretofore possessed must then accrue to the survivor upon the death of his cotenant.

In Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 358, 74 L. Ed. 991, 69 A. L. R. 758, the Supreme Court, under facts there considered, interpreted the purpose and effect of the federal estate tax law. In that decision the court said:

"If the event is death and the result which is made the occasion of the tax is the bringing into being or the enlargement of property rights, and Congress chooses to treat the tax imposed upon that result as a death duty, even though, strictly, in the absence of an expression of the legislative will, it might not thus be denominated, there is nothing in, the Constitution which stands in the way.

"The question here, then, is, not whether there has been in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right. of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights. * * *

"Before the death of the husband * * * the wife had the right to possess and use the whole property, but so also had her husband; she could not dispose of the property except with her husband's concurrence; her rights were hedged about at all points by the equal rights of her husband. At his death, however,

and because of it, she, for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. Thus the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other."

The court decided that the Fifth Amendment was not violated, as the tax was not so arbitrary and capricious as to amount to confiscation or deprivation of the property without due process of law.

Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388, had to do with the application of the federal law imposing an estate tax upon the interest of beneficiaries in insurance policies at the death of the insured. The court held that, as the assured retained a right under the policies during his lifetime to surrender and cancel the policies, or pledge them as securities for loans, and otherwise dispose of them for his own benefit, the interest of the beneficiaries becoming for the first time subject to appropriation by them at the death of the assured, the policies should be included among the estate assets and taxed.

In Klein, Administratrix, v. United States, 283 U. S. 231, 51 S. Ct. 398, 399, 75 L. Ed. 996, the court was considering an interest, upon which an estate tax was claimed, arising under a qualified deed given by the husband, decedent, to his wife, and it was there said: "It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed."

In Y. M. C. A. v. Davis, 264 U. S. 47, 44 S. Ct. 291, 292, 68 L. Ed. 558, referring to the estate tax imposed by the Revenue Act of 1918, we find the following expressions of the Supreme Court: "What was being imposed here was an excise upon the transfer of an estate upon death of the owner. It was not a tax upon succession and receipt of benefits under the law or the will. It was death duties, as distinguished from a legacy or succession tax. What this law taxes is not the interest to which the legatees and devisees succeeded on death, *but the interest which ceased by reason of the death.*" (Italics supplied.)

The case of Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, is not in point, as the facts there considered showed an unrestricted and absolute transfer of property prior to death of a decedent, with no interest, qualified or otherwise, retained by the grantor. There was later considered by the Supreme Court of the United States the effect of the same trust deed involved in the case just cited. Coolidge v. Long, 282 U. S. 582, 51 S. Ct. 306, 309, 75 L. Ed. 562, and the court there observed: "* * * The settlors divested themselves of all control over the principal; they had no power to revoke or modify the trust. * * * Upon the happening of the event specified without more, the trustees were bound to hand over the property to the beneficiaries. Neither the death of Mrs. Coolidge nor of her husband was a generating source of any right in the remaindermen."

When petitioner's mother died, the interest which she had in the property held in joint tenancy (that interest was a real interest subject, during her lifetime, to be transferred or otherwise terminated) ceased by reason of her death, and only because of that event. Hence it was taxable. The interest of petitioner, held subject to the tax, accrued by reason of the event of the death of the cotenant, and not by reason of the transfer theretofore made which created the joint tenancy. There is, therefore, present no attempt to tax an interest made complete and entire prior to the adoption of the act of 1924.

The order is affirmed.