FIDELITY UNION TRUST COMPANY, a corporation, complainant-respondent,

*v.*

HELEN TEZYK, defendant-appellant, and WATCH TOWER BIBLE AND TRACT SOCIETY, defendant-respondent.

[Argued May 27th, 1947.  Decided September 12th, 1947.]

*Mr. Joseph A. Fuerstman,* for the complainant-respondent.

*Messrs. Lum, Fairlie & Foster,* for the defendant-appellant.

*Mr. Abram Waks,* for the defendant-respondent.

The opinion of the court was delivered by

WELLS, J.

This is an appeal from a decree of the Court of Chancery with respect to eleven United States War Savings Bonds (Series E) held by the Fidelity Union Trust Company as executor of the estate of Enrique Rivero, deceased. The effect of the decree is that such bonds were not effectively transferred by gift to Helen Tezyk, but were part of the estate and should pass to the Watch Tower Bible and Tract Society under the terms of the decedent's will.

It appears that the decedent was a resident of an apartment house where Katherine Tezyk, mother of Helen, was caretaker. Through friendly relations developed among these parties the decedent became interested in Helen Tezyk's son, Joseph Bozis.

On February 5th, 1945, the decedent told Katherine that he wanted to see her daughter. When Katherine and Helen went to his apartment, he gave to Helen a brown envelope, containing the bonds in question and said, "This is, going to help you send your son through school." Helen Tezyk kept these bonds until after the death of the decedent on February 10th, 1945, the result of an illness from which he had suffered for some time.

On April 26th, 1945, Helen Tezyk turned the bonds over to the Trust Company, with the understanding that they would be cashed and held for proper disposition. Thereafter, being faced with adverse claims by Helen Tezyk and the Society, the Trust Company filed its bill in Chancery to have the rights in the bonds determined. It is from the decree in favor of the Society that this appeal is taken.

The question presented on this appeal is whether United States War Savings Bonds (Series E) can be the subject of

a gift *causa mortis* when no further action is taken beyond a handing over to the donee with an expression of intention that ownership shall be transferred. This is a novel question in this jurisdiction, and the vast holdings of bonds of this type make the question one of serious import. The opinion of the Chancery Court is to the effect that the terms under which these bonds are issued precludes their being the subject of any gift unless action for change of registration is taken as prescribed by the regulations of the Treasury Department.

The cases from various jurisdictions are consistent in holding that such bonds represent a proper pledge of federal credit; that the legislation providing for such bonds properly makes them subject to regulations of the Treasury Department; and that such regulations must be recognized and given the force of federal law by the courts of the various states. These rules have been followed in this state. See *Franklin Washington Trust Co.* v. *Beltram, 133 N. J. Eq. 11.* The real question, then, is whether the federal regulations affecting bonds of this type impose conditions which support or prohibit a gift of such bonds *causa mortis.*

The pertinent regulations to be considered in this appeal appear in *31 C. F. R. 1944 Supplement,* and are as follows:

"315.2. U. S. Savings Bonds will be issued only in registered form. * * * The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise provided in these regulations, will be considered as conclusive of such ownership and interest."

"315.4. Bonds of Series E may be registered * * * (a) In the name of one person * * * (b) In the names of two * * * persons in the alternative as coowners * * * (c) In the name of one * * * person, payable on death to one * * * other person * * *."

"315.8 U. S. Savings Bonds are not transferable and are payable only .to the owners named except in the case of disability or death of the owner or as otherwise specifically provided herein, but in any event only in accordance with the provisions of these regulations. * * *"

"315.29. A Savings Bond * * * may be reissued upon appropriate request * * * in the name of the owner with the name of another natural person as designated beneficiary. * * *"

"315.49. * * * If the estate of the decedent has been settled

in a court of competent jurisdiction, the bond will be paid to or re-issued in the name of the person entitled thereto as determined by the court. * * *"

The purport of the regulations indicates a clear intention that "E" Savings Bonds shall not be transferable except by the prescribed processes of registration. At the same time, the provisions for issue and re-issue permit an outright gift through registration in the name of the donee; a gift in trust through designation of a beneficiary other than the owner; or a gift effective at death by designation of a beneficiary or registration in the names of joint owners with survivorship. It would appear that provision has been made for effecting the same result as is accomplished by a gift *causa mortis,* except that such a gift would obviate the necessity of observing the registration process.

In *Weiss* v. *Fenwick, 111 N. J. Eq. 385,* the necessary elements of a gift *causa mortis* are clearly set forth. There can be no question that all of these elements are present in the case here on appeal, with one possible exception calling for decision of this court. It is required that the gift be "actual, unequivocal and complete during the lifetime of the donor." Was this gift "complete" without resort to the prescribed processes of registration?

There can be no doubt that the recognition of gifts *causa mortis* is well founded as an equitable means of carrying out the intentions of a donor who acts with a sense of impending death. Toward that end such gifts have been upheld in this state even in the absence of indorsement of promissory notes, registration of corporation bonds, or transfer of stock . certificates on the books of the company. This principle has been predicated on the right of a state to fix rules for devolution of personal property within its jurisdiction. On the other hand, such decisions have dealt with documents representing private obligations, and the subject-matter of this appeal are bonds which represent obligations of the federal government issued under regulations which the states are bound to recognize with the effect of federal law.

Such bonds have a peculiar status, for they are intended for issue in every state, are backed by the credit of the federal

government, and are offered for sale subject to conditions which it must be assumed were intended to enhance the borrowing power of the federal government. Conversely, it reasonably cannot be assumed that these conditions, made known to purchasers throughout the country, were intended to be subject to rules pertaining to the devolution of personal property in the various states, or to varying interpretations which might be accorded by the different state courts.

As indicated above, the federal regulations will permit the disposition of E Bonds to the same extent as by gifts *inter vivos* or *causa mortis,* so long as the procedure for registration is observed. If gifts *causa mortis* of such bonds are held valid, without re-issue and registration, then to that extent the federal regulations are set aside or made subject to state rules. By this means individuals, demonstrating circumstances of varying equity, may negate the conditions under which federal credit was pledged, and registration of these bonds no longer can be "considered as conclusive of * * * ownership and interest." See *31 C. F. R. 315.2, supra.*

Two cases from other directions have sustained gifts *causa mortis* with sufficient directness to warrant consideration, although the controversy involved other types of federal obligations. These cases are *In re Borchardt, 179 N. Y. Misc. 456; 38 N. Y. Supp. (2d) 987,* and *Dielzen* v. *American Trust and Banking Co., 131 S. W. Rep. (2d)* (*Tenn.*) *69.*

It appears that each of these decisions was reached through the same reasoning. In the first place, it was determined that federal savings bonds or certificates were transferable by will. Gifts *causa mortis* were recognized as dispositions of property in contemplation of death, and, therefore, analogous to a disposition by will. Consequently, gifts *causa mortis* of such bonds or certificates were sustained, with an observation that the federal regulations did not appear to prohibit such gifts.

It seems clear that the federal regulations permit establishment of rights in E Bonds through the normal administration of estates, and this should include disposition by will. However, a will properly executed gives proof in itself of the rights which accrue upon the death of the testator. On the other hand, a gift *causa mortis* normally requires that oral

proof be forthcoming in order to establish the rights which are claimed. Although some provision must be made for transfer of such bonds upon death of the registered owner, there is considerable difference between recognizing the written intent of the decedent and the acceptance of oral testimony which would have the effect of permitting transfer during the lifetime of the registered owner without observing the prescribed procedure for re-issue. For these reasons it is believed that the *Borchardt* and *Dietzen Cases* are inconsistent with the intent of the conditions under which E Bonds were issued as federal obligations.

It is possible that the real intentions of the donor would be achieved through upholding the validity of gifts *causa mortis* of E Bonds. It can be argued that such gifts would not violate the apparent nature of these bonds and make them subject to barter and sale on the open market. At the same time, it seems quite clear that the conditions under which these bonds were issued makes registration the sole evidence of ownership with the one necessary exception of recognizing formal procedures for the administration of estates. If any further exception is to be made for gifts *causa mortis,* then this action should be taken by the federal government, so that there might be a consistency in the terms of these obligations throughout the states.

The decree of the Court of Chancery should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, EASTWOOD, BURLING, WELLS, DILL, FREUND, JJ. 7.

*For affirmance not on opinion*—McGEEHAN, J. 1.

*For reversal*—DONGES, HEHER, COLIE, McLEAN, JJ. 4.