STATE BOARD OF EQUALIZATION, Appellant, v. COLE, Respondent.

No. 8739.
Submitted April 7, 1948. Decided July 1, 1948.
195 Pac. (2d) 989.

Mr. R. V. Bottomly, Atty. Gen., Mr. H. O. Vralsted of Helena, and Mr. Clarence Hanley, Asst. Atty. Gen., for appellant. Mr. Vralsted argued the cause orally.

Mr. Rex F. Henningsen, of Butte, for respondent. Mr. Henningsen argued the cause orally.

MR. JUSTICE METCALF delivered the opinion of the court.

This is an appeal by the state board of equalization from an order determining the inheritance tax in the estate of Mae H. Perier, deceased. The facts are not in dispute. Mae H. Perier died March 11, 1946. Included in her estate were five joint bank accounts, four in the name of her cousin Irene Ward and herself and one in the name of her sister Florence C. Gorman and herself, all created within three years prior to the death of decedent, and a number of Series G United States savings bonds held in the joint names of herself and other persons. The questions presented are whether the state is entitled to an inheritance tax upon the full amount of the joint bank accounts and upon the full market value of the bonds or only upon one-half of such amounts.

Although the tax on the government bonds and the tax on joint bank accounts are provided for by the same sections of the statute, the legal questions involved in determining their taxability differ materially so that they require separate treatment. We will first discuss the question as to the amount of the tax to be levied on the joint bank accounts.

Mrs. Mae H. Perier was a widow residing in Silver Bow county. Her husband died September 7, 1943. On September 25, 1943, eighteen days after the death of her husband, Mrs.

Perier caused three of her individual checking and savings accounts in Butte banks to be transferred to joint bank accounts. These were made payable to herself or in the alternative to Mrs. Perier's cousin, Irene Ward. Both Mrs. Perier and Irene Ward signed a written statement directing the bank to pay the account to either of them or upon the death of one to pay the account to the survivor who would become the sole owner. Two days later a fourth account was created with identical arrangements and on May 22, 1945, a fifth account with Florence C. Gorman as joint depositor was created. The contract with the bank and the provisions for withdrawal by either co-depositor or the survivor were again identical. On March 11, 1946, Mrs. Perier died. The five bank accounts were valued at $8,347.83. The trial court held that subsection 6 of section 10400.1, Revised Codes of Montana 1935, was the proper section fixing the inheritance tax upon joint bank accounts and accordingly imposed an inheritance tax measured by one-half of the value of the joint bank accounts. From this order fixing the inheritance tax the state board of equalization has appealed.

When states began enacting inheritance tax legislation imposing taxes upon the right to take property by devise or descent the courts were confronted with the question of whether such statutes taxed the interest acquired by the survivor of a joint tenancy. The courts uniformly held that the acquisition of an additional interest in property as a result of the survivorship attribute of joint tenancy was not taxable as a succession. The courts analyzed the characteristics of a joint tenancy and concluded that the property passed to the survivor under the conveyance or instrument by which the joint tenancy was created. Therefore the property did not pass under the laws regulating descent and distribution of the property of decedent. It followed that the additional interest acquired by the survivor in property jointly held was not taxable under inheritance tax statutes taxing "succession" to property.

The Montana legislature enacted subsection 6 of section 10400.1, Revised Codes of Montana 1935, reading as follows:

"Joint estates. Whenever any property, real or personal, is held in the joint names of two or more persons, or as tenants by the entirety, or is deposited in banks or other institutions or depositaries in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons, the right of the surviving tenant by the entirety, joint tenant, or joint tenants, person or persons, to the immediate ownership or possession of such property shall be deemed a transfer of one-half or other proper fraction thereof as though the property to which such transfer relates belonged to the tenants by the entirety, joint tenants, or joint depositors as tenants in common, and had been bequeathed or devised to the surviving tenant by the entirety, joint tenant, or joint tenants, person or persons, by such deceased tenant by the entirety, joint tenant, or joint depositor, by will, except such part thereof as may be shown to have originally belonged to the survivor and never to have belonged to the decedent."

This subsection expressly provides for the taxation of the ▮ interest acquired by the surviving co-owner as a result of the death of the other co-owner or co-owners. It recognizes that at the death of the co-tenant there is a direct shifting of economic interest (see United States v. Jacobs, 306 U. S. 363, 59 S. Ct. 551, 83 L. Ed. 763), and it is this additional interest obtained by reason of the death of the co-tenant and not by reason of the transfer creating the joint tenancy that is taxed by such statutes as subsection 6. (Gwinn v. Commissioner Internal Revenue, 9 Cir., 54 F. (2d) 728, 84 A. L. R. 176.)

The early inheritance tax laws which were solely concerned with the taxation of transfers of property at death were evaded in another way. Gifts inter vivos, and inter vivos transfers were made in contemplation of death and gifts and transfers were made to take place at the death of the donor. The legislatures discovered that it was also necessary to tax transfers of this kind. Statutes such as subsection 3 of section 10400.1, Revised Codes 1935, were enacted taxing transfers "by deed, grant, bargain, sale or gift, made in contemplation of death of

the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death." Commenting on the legislative intent in enacting this section this court in Re Wadsworth's Estate, 92 Mont. 135, 145, 11 Pac. (2d) 788, 791, quoted from Chief Justice Hughes' opinion in United States v. Wells, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed. 867, " 'The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax'."

So the question of the taxability of the original transfer from the deceased joint tenant to the survivor is a different question from the one involving the taxability of the interest acquired as a result of the death of the co-tenant. In re Huggins' Estate, 96 N. J. Eq. 275, 125 A. 27.

On September 25, 1943, Mrs. Perier withdrew the money from her personal checking account in the Metals Bank in Butte and redeposited it in a joint account payable to either Irene Ward or Mae H. Perier or the survivor. Both co-depositors signed a written agreement providing that either party could draw on the account and that upon the death of one of them the survivor should become the sole owner and payee of the account.

The effect of such a deposit where the money deposited belonged solely to one of the parties and the deposit was made without consideration has been exhaustively examined in notes in 48 A. L. R. 189; 66 A. L. R. 881; 103 A. L. R. 1123; 135 A. L. R. 993, and 149 A. L. R. 879. Such a joint deposit has been held to be a gift inter vivos, an arrangement for the convenience of the party creating the account or some form of testamentary disposition depending upon the intent of the person creating the account.

Of course if the transfer by the donor to the joint account be regarded as a gift it has to satisfy all the requirements of a valid gift inter vivos. The essential requisites of a gift inter vivos are delivery, accompanying intent, and acceptance by the donee. (Nelson v. Wilson, 81 Mont. 560, 264 Pac. 679; Fender v. Foust, 82 Mont. 73, 78, 265 Pac. 15; sec. 6882, Rev. Codes of Montana 1935.)

The first question is the intention of the parties making the deposit. (5 Michie, Banks & Banking, p. 101, sec. 46.) Such intention was discussed in Hill v. Badeljy, 107 Cal. App. 598, 605, 290 Pac. 637, 640, where the court declared, ''The question involved in cases of this character is the intention of the parties making the deposit, and where such intention is evidenced by a written agreement, as was done in the case at bar, this question of intention ceases to be an issue, and the courts are bound by the written agreement.'' The above quotation was cited and approved by this court in Ludwig v. Montana Bank & Trust Co., 109 Mont. 477, 502, 98 Pac. (2d) 377, 379.

The Montana court also said, quoting from 9 C. J. S., Banks & Banking, sec. 286, ''Where no other evidence of intent is available, the form of the deposit may control; but when such intent is evidenced by a written agreement, the question of intention ceases to be an issue and the courts are bound by the agreement.'' Ludwig v. Montana Bank & Trust Co., supra, at page 502 of 109 Mont., at page 389 of 98 Pac. (2d).

In this jurisdiction the signing of the signature card containing an agreement that the deposit was payable to either of the co-depositors or the survivor settled the question of the donative intent of the donor to make a gift in joint tenancy. See In re Sullivan's Estate, 112 Mont. 519, 118 Pac. (2d) 383.

In order to constitute a delivery sufficient to make the crea- tion of a joint account a gift inter vivos there must not only be a donative intent but a complete relinquishment of the donor's dominion over the subject of the gift. Wilson v. Davis, 110 Mont. 356, 103 Pac. (2d) 149. The respondent's contention is that since the donor reserves a measure of control over the joint bank account and reserves the right to withdraw the funds himself there can be no transfer. The problem is discussed in 7 Am. Jur., Banks, section 431, page 304:

''If, therefore, the general rule applicable to gifts, that the donor must divest himself of all power over the gift, is to be applied, it seems that the gift in such a case must fail. This is the view of some cases.

"The majority of cases, however, hold that if the intention of the donor is to vest a present right to share in the deposits constituting a joint account, such an act constitutes a gift that can be sustained. This is likewise true, and the transaction constitutes a completed gift, despite a reserved power of revocation."

The actual gift made is not the money in the bank but the ▮ gift of a co-equal right with the donor to exercise control over the deposit. Goldston v. Randolph, 293 Mass. 253, 199 N. E. 896, 103 A. L. R. 1117. In Burns v. Nolette, 83 N. H. 489, 144 A. 848, 850, 67 A. L. R. 1051, the court was confronted with the question of whether the creation of a joint bank account and the admission of another to joint control but still retaining a right in the donor to withdraw the fund is a sufficient divesting of the donor's control to satisfy the requirements for a completed gift. The court said:

"It seems to us that it is. The donee's present right is complete. He can draw from the account so long as funds remain. That right is what was given to him. It might subsequently prove valueless, if the donor withdrew the whole deposit. But for what it was worth it was a completed gift. No further act of the donor was required. No act of hers could defeat the right, although she might render it of no value. On the other hand, he could destroy her reserved right by a like proceeding. The matter is well stated in a New Jersey case, not officially reported, but approved in Schippers v. Kemphes, 72 N. J. Eq. 948, 73 A. 1118; New Jersey Title Guarantee & Trust Co. v. Archibald, 91 N. J. Eq. 82, 108 A. 434, and Kaufman v. Edwards, 92 N. J. Eq. 554, 113 A. 598. 'The external form of the gift is the absolute conversion of the donor's property into a binding obligation of a third party, the performance of which according to its terms may upon certain contingencies benefit the donee. There is nothing, however, contingent about the gift. The gift is absolute. The right is vested beyond recall in the donee. It is a matter of no consequence that the right so vested may

prove in the end to be of no pecuniary value.' Stevenson, V. C., in Dunn v. Houghton (N. J. Ch.) 51 A. 71, 78.

''If the intent was to confer upon the defendant a present right to draw upon the fund, either without limitation or for and to the extent of described purposes, the transfer was valid, notwithstanding the donor retained a right to draw upon the fund at will. She thereby completely divested herself of the title transferred to the defendant. It did not take effect upon her death, and was not enlarged by that event. Such title as the defendant had vested at the time of the entries upon the books. It was a present right and presently enjoyable.''

Here then was a completed gift transferring an interest in the deposit to the donee. The transfer was made within three years immediately preceding the death of the donor. In the absence of a showing to the contrary this is a transfer in contemplation of death. (Subsec. 3, sec. 10400.1, Rev. Codes of Montana 1935.)

Since the creation of the joint bank account was a completed gift inter vivos and was taxable under subsection 3 it is necessary to determine just what the donee received from the donor by the transfer.

Our statute expressly provides for the joint ownership of property by several persons. (Sec. 6680, Rev. Codes 1935.) We have specifically provided for the creation of joint bank accounts payable to either of the depositors or the survivor (sec. 6014.53, Rev. Codes 1935). Section 6680 defines a joint interest as ''one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy * * *.''

The California court has declared that the identical California statute created the same estate known as joint tenancy at common law. In re Gurnsey's Estate, 177 Cal. 211, 170 Pac. 402. While the joint bank account does differ from other types of joint tenancies it has not been treated differently from other joint ownership. In re Suter's Estate, 258 N. Y. 104, 179 N. E. 310. For example either co-tenant of a joint tenancy in real

property could sever the estate by conveying his interest to a third party and as between the remaining co-tenant and the transferee the new estate became a tenancy in common. The special feature distinguishing joint tenancy from other joint interests was the attribute of survivorship. So long as both co-tenants remained alive any transfer by one co-tenant only resulted in a transfer of half the property. But either joint owner of a joint bank account by virtue of the special contract with the bank can acquire dominion over the entire account by drawing a proper order on the bank. This feature is a special attribute of a joint bank account. Nevertheless a joint bank account is otherwise subject to the same rules as other joint tenancies. Beach v. Holland, 172 Or. 396, 142 Pac. (2d) 990, 149 A. L. R. 866, 878.

Under the common law the joint tenants were seized "per my et per tout," by the half and by the whole. That is, each has the entire possession of the estate. If there be two of them they have an individual moiety of the whole. But for the purposes of alienation each tenant was seised of his proportionate part. 4 Kent's Commentaries, 13th Ed., 386. Each joint tenant has the whole for the purposes of tenure and survivorship but as between the co-tenants the rights are equal. "But the tenant's interest is nevertheless a separate and distinct property right which he holds as an individual against his co-tenants and all the world." 2 Walsh, Commentaries, Law of Real Property, sec. 116, p. 10. See Thornburg v. Wiggins, 135 Ind. 178, 34 N. E. 999, 22 L. R. A. 42, 41 Am. St. Rep. 422.

Under the statute the interest of each of the co-tenants was equal. Then it follows that for tax purposes the transfer creating the joint tenancy in the bank accounts was a transfer of an equal share of the joint account to the donee by the donor. It is true that either party could acquire the whole account either by withdrawing it during the lifetime of the co-owners or by survivorship. But that is one of the special incidences of joint tenancy. So long as the account existed the interest of each co-owner was equal to that of the other. For tax purposes

then the share the joint tenant acquired by the creative instrument was a half interest.

This is the view taken by the Treasury Regulations with respect to joint tenancies in real property. 26 C. F. R. 85.2, paragraph H, provides: "If A with his own funds purchases property and has the title thereto conveyed to himself and B as joint tenants, with rights of survivorship, but which rights may be defeated by either party severing his interest, there is a gift to B in the amount of one-half the value of such property." With respect to joint bank accounts, however, the same Federal Regulations provide, "(d) If A creates a joint bank account for himself and B, there is a gift to B when B draws upon the account for his own benefit to the extent of the amount drawn."

This administrative regulation is based on the minority view that there is not a completed gift because the donor has not relinquished complete dominion over the account. But the federal government imposes a tax upon the entire estate held in joint tenancy where the survivor acquired his interest from the decedent without consideration. Therefore the administrative regulation taxing as a gift only that part of the joint bank deposit actually withdrawn by the donee would redound to the benefit of the government because the money remaining in the joint account would be taxed at the higher rate imposed by the estate tax. (26 U. S. C. A., sec. 811(e), 26 U. S. C. A. Int. Rev. Code, sec. 811(e). See Magill, "The Impact of Federal Taxes," p. 110, Commerce Clearing House 1943.)

When the joint bank account was created without consideration and within the three-year period, a transfer was made. Under our statutes the substance of the transaction was to make a gift of one-half of decedent's account to the donee. For tax purposes the substance of the transaction should control. Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, In re Estate of Oppenheimer, 75 Mont. 186, 243 Pac. 589, 44 A. L. R. 1470; Helvering v. Hallock, 309 U. S. 106, 112-114, 60 S. Ct. 444, 84 L. Ed. 604, 125 A. L. R. 1368.

Then upon the death of the donor when the right of survivor-

ship operated to vest the entire estate in the surviving donee another taxable transfer occurred. It is this benefit that is taxed by subsection 6 of section 10400.1, Revised Codes of Montana 1935. This direct shifting of the economic interest is a different and distinct taxable transaction. United States v. Jacobs, 306 U. S. 363, 59 S. Ct. 551, 83 L. Ed. 763.

Therefore the half interest in the bank account the donee joint tenants received by the creation of the account is taxable as a transfer in contemplation of death under subsection 3 and the portion received by the right of survivorship is taxable under subsection 6.

In this way effect is given to both subsections of section 10400.1, Revised Codes 1935. A fundamental rule of construction is that, if possible, effect shall be given to all parts of a statute. Green v. City of Roundup, 117 Mont. 249, 157 Pac. (2d) 1010. And each part of a statute must be given a reasonable construction which will enable it to be harmonized with other provisions (State ex rel. Dean v. Brandjord, 108 Mont. 447, 92 Pac. (2d) 273), and give it vitality and make operative all of its provisions. County of Hill v. County of Liberty, 62 Mont. 15, 203 Pac. 500. Statutes "should be so construed as to give a sensible and intelligent meaning to every part and avoid absurd and unjust consequences. Section 516, Lewis' Sutherland Stat. Const. (2d Ed.)" State v. Redmond, 73 Mont. 376, 380, 237 Pac. 486, 488.

Any other construction leads to obvious absurdities and inequities. Suppose a man has an estate of $150,000 which he wishes to divide among his three sons. He has $50,000 in a bank account, a farm worth $50,000 and $50,000 in cash. He is informed he is in imminent danger of death so he calls son A to him and gives him $50,000 in cash as a completed gift. This would obviously be taxable on the full value under subsection 3 as a gift in contemplation of death. To son B he wills the farm. it passes by will and therefore is taxable upon the full market value under subsection 1 of section 10400.1, Revised Codes. For son C he transfers the $50,000 from his individual bank account

to a joint bank account payable to either or the survivor. Under the theory contended for by the respondent, son C would be taxed on 50% of the value of the account.

Likewise under that theory the same tax is levied against the survivor who in fact has contributed half of the funds comprising the joint bank account as is levied against the survivor who has contributed none of the funds of the joint account.

By this construction we have heeded the admonition in 49 A. L. R. 902: "The courts should give a fair construction to the statute, not a forced and technical one which might afford opportunity to evade the statute and prevent taxation of property fairly within its provisions. Their very purpose is to make it impossible to escape transfer taxes by transfers merely colorable or fictitious. Therefore they should be carefully considered and liberally construed in favor of the taxing power, lest its purpose be circumvented by designing persons; any construction that facilitates evasion should be avoided." Citing In re Ogsbury, 7 App. Div. 71, 39 N. Y. S. 978 and In re Fulham's Estate, 96 Vt. 308, 119 A. 433, and see In re Wilson's Estate, 102 Mont. 178, 56 Pac. (2d) 733, 105 A. L. R. 367; Commercial Credit Co. v. O'Brien, 115 Mont. 199, 146 Pac. (2d) 637.

The next question is the determination of the tax due on the Series G United States savings bonds. Five of the bonds were purchased September 1, 1942, one was purchased March 1, 1943, one August 1, 1943, two on September 1, 1943, and one July 1, 1944. All of the bonds were purchased by Mrs. Perier and the money paid to the United States was exclusively her own. The bonds were all payable to Mrs. Perier or in the alternative to the person named on the face of the bond. Mrs. Perier received the bonds when they were issued and retained possession of them during her lifetime. The bonds were kept in decedent's safety deposit box and none of the alternate payees ever had access to this safety deposit box or ever attempted to exercise any control over the bonds.

After the death of Mrs. Perier the bonds were found in the box by the executor. Federal regulations provide for the issu-

ance of bonds in the name of two persons and permit the treasury department to pay the bonds to either person upon his individual request without requiring the signature of the other person named on the bond upon delivery of the bond to the paying agency. Upon the death of one of the alternate payees the bond may be paid to the survivor or upon proof of the death of one such payee the bond may be reissued and registered in the name of the surviving co-owner upon his request. The bonds may not be reissued to either unless proof of the death of the other is supplied the paying agency. The bonds are not transferrable. (Title 31, sec. 315.11, Book 3, Part 1, Code of Federal Regulations, 1940 Supplement.)

Series G savings bonds are issued under regulations which provide, "The bonds shall be subject to estate, inheritance, gift, or other excise taxes, whether Federal or State." (Book 2, Title 31, sec. 318.2(g) of the 1944 Supplement of the Code of Federal Regulations, Treasury Department Circular No. 654.) By virtue of these regulations the bonds are taxable under state inheritance tax laws. Hallett v. Bailey, Me., 54 A. (2d) 533, and Succession of Raborn, 210 La. 1033, 29 So. (2d) 53.

The court held that only one-half of the value of the bonds was and is taxable under subsection 6 of section 10400.1, Revised Codes. The board contends that the full value of the bonds is taxable under subsection 3 of section 10400.1, Revised Codes.

Here, again the first question is to ascertain the intention of the donor from the surrounding circumstances. Mrs. Perier by purchasing bonds with money that came solely from her private estate created a contract with the government that the surviving payee would be permitted to realize on the bonds in the event of her death. The incident of survivorship was part of the contract. Either person named on the face of the bonds could realize on them by signing and surrendering the bonds themselves as instruments of title. Mrs. Perier could have made a complete gift in praesenti by registering these bonds in

her name and the name of another as alternate payee and then delivering the bonds to the person named. In that event there would have been a present transfer in contemplation of death and with respect to those bonds issued more than three years before the death of decedent the burden of proof would have been on the state to show that the transfer was one in contemplation of death. But Mrs. Perier did not deliver the bonds to the co-owners. She kept them in her possession and continued to exercise complete control over them. While she could not transfer them, she could surrender the bonds and realize the accrued value in accordance with the table of values that was a part of the bonds. On the other hand the alternate payees had no rights whatsoever so long as the bonds were in the possession of the decedent during her lifetime. This indicates an intention on the part of Mrs. Perier to vest title in the donees at or after her death.

"* * * The provisions for issue and re-issue permit an outright gift through registration in the name of the donee; a gift in trust through designation of a beneficiary other than the owner; or a gift effective at death by designation of a beneficiary or registration in the names of joint owners with survivorship." Fidelity Union Trust Co. v. Tezyk, 140 N. J. Eq. 474, 55 A. (2d) 26, 27, 173 A. L. R. 546.

An analogous case is Walsh v. Hall, 131 Conn. 345, 39 A. (2d) 889, 890, where the decedent died intestate in 1943. Between 1939 and 1943 the deceased created six joint savings bank accounts with various relatives as joint owners. She contributed all the money and retained control of the pass books and drew the entire interest on the accounts during her lifetime. Only one of the survivors knew of the creation of the joint accounts.

The court said, "the question here is, when did donees come into the possession and enjoyment of these accounts. If this occurred at the time of the creation of the accounts, the decision of the trial court was correct." i. e. taxable on "fractional part of the property, determined by dividing the fair market value of the entire property by the number of persons in whose joint

24

names it was held.'' (1939 Supp. Conn. Gen. St., sec. 396e.) The court held that since the decedent had kept the pass books, had drawn the interest and had failed to notify the joint owners of their interest it was taxable as a transfer intended to take effect in possession or enjoyment at or after death. The fact that the Connecticut statute contains a proviso that taxing under the joint interest portion of the statute shall not prevent taxing under the portion imposing a tax on transfers intended to take effect at or after death is not controlling. Under the above analysis of the statute the same result could be reached without such a proviso and under elementary rules of interpretation should be reached to give full effect to the legislative exercise of the taxing power. See also D. M. Read Co. v. American Bank & Trust Co., 110 Conn. 461, 148 A. 130, and Beach v. Busey, 6 Cir., 156 F. (2d) 496, certiorari denied 329 U. S. 802, 67 S. Ct. 493, 91 L. Ed. 685.

Subsection 6 of section 10400.1, Revised Codes 1935, is not applicable to these bonds. Subsection 6 imposes a tax on property ''held in the joint names of two or more persons.'' The bonds in question are not held in the joint names of two or more persons. So long as the bonds remained in the possession of Mrs. Perier they were hers. The contract with the government provided that in the event of her death the value of the bonds would be paid to the person therein designated but so long as Mrs. Perier was alive and retained possession of the bonds they were hers solely. The provision in the contract that the bonds were to belong to the survivor of the named parties does not make the bonds personal property held in the joint names of two or more persons. The ownership clause is 'in the alternative, i. e., Mrs. Perier or Mrs. Florence C. Gorman, etc.

The bonds then were the property of the decedent so long as she retained them in her possession. They constituted a transfer of personal property without consideration intended to take effect in possession or enjoyment of the named donees at or after the death of Mrs. Perier and were therefore taxable by subsection 3 of section 10400.1, Revised Codes of Montana 1935,

on their full market value. See In re Wm. B. Dana Co., 164 App. Div. 45, 149 N. Y. S. 417, for a like holding on securities of a private corporation.

The joint accounts and the bonds should be taxed on their full market value. The order of the district court is reversed and the cause remanded with instructions to enter an order determining the inheritance tax in the matter of the estate of Mae H. Perier, deceased, in conformity herewith.

Mr. Chief Justice Adair and Associate Justice Choate concur.

MR. JUSTICE ANGSTMAN (dissenting in part and concurring in part.)

It is elementary that where a statute deals with a subject generally and another deals specifically with a part of the same subject, to the extent of any necessary repugnance between them, the special prevails over the general. A few of the many cases so holding are the following: Stadler v. City of Helena, 46 Mont. 128, 127 Pac. 454; Daley v. Torrey, 71 Mont. 513, 230 Pac. 782; Franzke v. Fergus County, 76 Mont. 150, 245 Pac. 962; Langston v. Currie, 95 Mont. 57, 26 Pac. (2d) 160; Durland v. Prickett, 98 Mont. 399, 39 Pac. (2d) 652; In re Wilson's Estate, 102 Mont. 178, 56 Pac. (2d) 733, 105 A. L. R. 367.

Under subdivision 6 of section 10400.1, it is only one-half of the property held in the joint names of two or more persons or is deposited in banks in the joint names of two or more persons, that is taxable. In legal effect the legislature by saying that one-half is taxable has said that the other one-half is not taxable.

True the statute says ''or other proper fraction thereof'' but that means that when there are three joint tenants the fraction deemed to be passing upon death would be one-third, if there be four, the proper fraction thus passing would be one-fourth, etc.

This is the manner in which courts usually construe statutes of similar import. See Kidder on State Inheritance Tax and Taxability of Trusts, page 114, et seq. Here the joint tenancy

was between two persons only and hence the fraction taxable would be one-half.

The case of Walsh v. Hall, 131 Conn. 345, 39 A. (2d) 889, is relied upon as announcing the rule that a joint bank account which, under the facts, was intended to take effect at death was taxable as a transfer under the statute taxing transfers intended to take effect in possession or enjoyment at or after death. But the statute there under consideration dealing with joint estates contained a proviso (sec. 184f, 1941 Supplement) not found in ours to the effect that the law taxing jointly owned property shall not be construed to prevent the taxability of the transfer under the provisions of subsection (c) or (d) of section 395e, 1939 Supplement, which subsections cover transfers in contemplation of death and those intended to take effect at or after the death of the transferor.

Had we such a proviso in subsection 6, then of course that case would be applicable, but not having such a proviso in our statute then the case is of no value here except as an argument in favor of such legislation. The joint tenancy statute involved in the case of Evans' Estate, 57 Pa. Dist. & Co. 55, relied upon by the board on rehearing had a similar proviso and hence is not applicable here.

The attempt to reconcile the two subsections, (3) and (6), of section 10400.1, so as to permit the taxation of one-half of the property received by the survivor under each subsection (a proposition not urged by the state board), proceeds on the fallacious notion that the making of the joint bank account constituted a complete gift of one-half of the deposit as of that time. The case of Ludwig v. Montana Bank & Trust Co., 109 Mont. 477, 98 Pac. (2d) 377, 379, is cited as sustaining that conclusion. That case does not so hold. That question was not involved in the case. In that case one of the joint depositors had withdrawn the money while both were living and the action was against the bank for alleged conversion. The only question before the court and the point upon which the court divided was whether certain moneys were properly deposited in the joint

account. The case of In re Sullivan's Estate, 112 Mont. 519, 118 Pac. (2d) 383, simply held that the joint account agreement controlled upon death rather than a subsequently made will.

Upon the creation of a joint bank account there is no completed gift by one to the other. The one furnishing the money simply gives to the other the right to withdraw the funds, but reserves to himself the same right. So long as the one furnishing the money reserves that right there can be no completed transfer or gift to the other, where as here the other has not himself exercised the right to withdraw the funds.

There being no completed gift or transfer as of the time of making the deposit, then of course it would follow that there was no transfer in contemplation of death. There was no transfer at all. It seems to me that where as here we are dealing with an account actually in the bank at death subsection 6 and it alone has application. The suggestion of possible fraud was disposed of by the court in the case of In re Tilley's Estate, 166 App. Div. 240, 151 N. Y. S. 79, 81, where the court said:

"While there might be a joint tenancy created which would be so obviously fraudulent in its inception as to take it out of the general rule, we are persuaded that where an account is created in the manner permitted by the Banking Law, with all of its incidents known and recognized in the law, it cannot be presumed that there was any other intention than that which the law ascribes to such an act, and that property thus disposed of is not 'made in contemplation of death,' as that language is understood in the jurisprudence of this state nor 'intended to take effect in possession or enjoyment at or after such death.' Section 220, Tax Law [consol. Laws, c. 60].

"If the Legislature deems such dispositions of property to be properly taxable, that is a question which may be dealt with in the proper department; but this court has no power to enlarge upon the scheme of tax laws. (Citing cases.) "

That the legislature did not consider the mere making of a joint bank account as a gift by the one furnishing the money of

one-half to the other within the meaning of the taxing statutes is made apparent from the fact that if the so-called donee died first under the statute the donor would have no tax to pay under subsection (6) because of the last two lines reading, ''except such part thereof as may be shown to have originally belonged to the survivor and never to have belonged to the decedent.''

To say that a completed gift of one-half is accomplished by the making of the joint deposit would defeat the purpose of the legislature expressed in the last two lines of subsection (6), because if the so-called donee died first and there was a completed gift of one-half to the donee, then that one-half would by right of survival pass to the donor but the last two lines of subsection (6) plainly make all the account untaxable under such circumstances.

So far as the record in this case shows the joint bank accounts were made in good faith and in the form and manner recognized as proper under the law, both state and federal, and so long as we have a statute specifically dealing with the taxation of joint bank accounts passing to the survivor they are governed by that statute. It is noteworthy that the Supreme Court of Pennsylvania under statutes substantially the same as ours in Re Cochrane's Estate, 342 Pa. 108, 20 A. (2d) 305, 307, 135 A. L. R. 1058, upheld the statute taxing the survivor upon the basis of the fractional portion of the estate by dividing the whole amount by the number of joint tenants. It said, ''Joint tenancies are in a class by themselves and the tax here in question being uniform upon all joint tenancies the constitutional provision is not violated.''

The court made no attempt to justify the statute on the ground that other fractions of the estate were taxable as transfers in contemplation of death or intended to take effect at death, though Pennsylvania has a statute corresponding to our subsection (3).

Utah has a statute imposing a tax on transfers made in contemplation of death much like our subsection (3) of section 10400.1. It was involved in the case of In re Lambourne's

Estate, 97 Utah 393, 93 Pac. (2d) 475. It also has a section deal-
ing with the taxing of property held in the joint names of two
or more persons.

The case of In re Cowan's Estate, 98 Utah 393, 99 Pac. (2d)
605, 606, involved joint bank accounts and the court, in de-
termining whether they were taxable, applied and construed
the special statute dealing with joint bank accounts. It read:
"Whenever property is held in the joint names of two or more
persons, or as tenants by the entirety, with right of survivor-
ship, or is deposited in banks or other institutions or deposi-
tories in the joint names of two or more persons and payable
to the survivor or survivors upon the death of one of such per-
sons, the right of the survivor or survivors to the immediate
ownership or possession and enjoyment of such property shall
be deemed a transfer taxable under the provisions of this chap-
ter in the same manner as if the whole property to which such
transfer relates belonged to the deceased and passed to the
survivor or survivors by will." (Sec. 80—12—5, R. S. U. 1933.)

The court held that without that statute the "property trans-
ferred as an incident of the enumerated contractual relation-
ships is not subject to inheritance tax laws."

It then held that the whole of the estate was taxable under
the statute relating to joint tenancies. That decision was prop-
er under that statute because the joint tenancy statute specifi-
cally provided that all of it should be taxed whereas ours says
that only one-half shall be.

It is noteworthy too that Washington taxes the whole of the
jointly owned property (See Nelson v. Olympia Federal Savings
& Loan Ass'n, 193 Wash. 222, 74 Pac. (2d) 1019), but whether
the whole or only one-half shall be considered in fixing the tax
is strictly a matter for the legislature.

As above noted, several states have statutes taxing transfers
made in contemplation of death or intended to take effect at
death and also a statute taxing joint estates passing to the
survivor. In all the cases coming before the courts not one
has held that joint estates passing to the survivor are taxable

under the section dealing with transfers made in contemplation of death, save the Connecticut case of Walsh v. Hall, supra, and that decision, as above pointed out, was based upon a special proviso authorizing this to be done.

On the rehearing the state board stressed the case of State v. Moore, 208 Wis. 172, 242 N. W. 496, as sustaining its contention. That case does not sustain its position. There the property involved consisted of shares of stock in a corporation which were owned by deceased and Marquis D. Moore as tenants in common. There was no holding as joint tenants with the right of survival. Originally deceased owned 47 shares of the stock. He transferred 10 shares to his son, Marquis D. Moore, and the remaining 37 shares were transferred by Moore to himself and his son, within six days before his death. The county court decided that the transfer of the 28½ shares to the son was not made in contemplation of death and hence not taxable. The appellate court simply held, and I think correctly, that the transfers were in contemplation of death and taxable. The court did not mention any statute of Wisconsin comparable to our subsection (6).

I am of the view that subsection (6) of section 10400.1 supports the conclusion of the trial court as to the joint bank accounts and that the judgment as to them should be affirmed. I also think that this conclusion is the only one that can be adopted to give effect to both subsections (3) and (6). Subsection (3) applies to all transfers in contemplation of death or intended to take effect in possession and enjoyment at or after death except those involving joint bank accounts actually remaining on deposit at the time of death and property held at the time of death in the names of two or more persons jointly. Those are controlled by subsection (6) whether we like that subsection or not.

I am able to subscribe to the majority opinion dealing with the government bonds because I think they were not held "in the joint names of two or more persons" within the meaning of subsection (6) of section 10400.1, Rev. Codes.

Mr. Justice Gibson (dissenting in part and concurring in part).

I concur in the opinion of the court as to the taxation of the bonds. They were not in the ''joint names'' of the decedent and the other persons named as alternate payees thereof, and they were not delivered to such alternate payees, and therefore the bonds did not constitute property ''held in the joint names of two * * * persons'' as defined in subdivision 6 of section 10400.1, Revised Codes of Montana 1935.

I concur in the dissent of Mr. Justice Angstman as to the taxation of the bank accounts, not only for the reasons in his opinion given, but because the presumption declared in subdivision 3 of section 10400.1, Revised Codes 1935, only extends to transfers made within three years prior to the death of the transferror of ''a material part of his estate, or in the nature of a final disposition or distribution thereof.'' The record shows the valuation of the estate of decedent to have been in excess of $125,000. I do not think the creation of bank accounts totalling $8,347.83, of which admittedly one-half is taxable under subdivision 6 of said section, brings such accounts within the provisions of the presumption created by the statute.