No.   91-287

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1992**

FRANCIS J. **SEMAN**, Personal Representative
of the ESTATE OF GARY W. SEMAN, Deceased,

        Plaintiff and Appellant,

   -vs-

JUDY LEWIS,

        Defendant and Respondent.

APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Donald J. Beighle argued, Deer Lodge, Montana
John **A**. Alexander, Butte, Montana.

      For Respondent:

          Patrick T. Fleming argued, Butte, Montana.

Submitted:  January 2, 1992

Decided:  March 5, 1992

Filed:

MAR 5 - 1992

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Second Judicial District Court, Silver Bow County, Montana, in which the Honorable James E. Purcell granted summary judgment in favor of Judy Lewis, respondent. Francis Seman, personal representative of Gary Seman's estate, appeals. We affirm.

The issue presented for our review is whether a bank signature card which designates an account as "joint" creates a joint tenancy with right of survivorship or a tenancy in common.

The undisputed facts of the case at bar are as follows:

Gary Seman died intestate. Appellant, Francis Seman, was appointed personal representative of Gary Seman's estate. Respondent, a personal friend of Gary Seman, was a co-owner and co-signatory with him on a joint savings account (the Seman/Lewis account).

Approximately five years before he died, Gary Seman added respondent's name to his savings account. A bank representative completed a new signature card which controlled access to the account which was placed in the names of "Gary Seman or Judy Lewis." The card indicated that the ownership of the account was "joint." Gary Seman and respondent signed this card.

Deposition and affidavit testimony indicate that Gary Seman intended respondent to have full access to the funds in this account. Nonetheless, respondent made no deposits in or withdrawals from the account prior to Gary Seman's death. Shortly after Gary Seman's death, respondent withdrew the balance and closed the Seman/Lewis account.

2

Appellant brought the initial action in district court to recover one-half of the amount contained in the Seman/Lewis account on the date of Gary Seman's death, claiming that respondent and Gary Seman held the account as tenants in common. Finding that the parties held the account as joint tenants with right of survivorship and that the survivor was entitled to the entire balance of the account, the District Court granted summary judgment in respondent's favor.

Appellant urges reversal of the District Court pursuant to our decision in University of Montana v. Coe (1985), 217 Mont. 234, 704 P.2d 1029, contending that Gary Seman and respondent held the funds as tenants in common, entitling appellant to at least one-half of the account balance on the date of Gary Seman's death. We disagree.

In Coe, this Court found that a signature card designating an account as "joint" without language of survivorship created a tenancy in common. In the case at bar, the District Court, faced with an almost identical signature card, adopted the opposite result finding that the joint account was a joint tenancy with right of survivorship. Consequently, when Gary Seman died, the entire balance in the account transferred to respondent.

Coe is distinguishable. In Coe we specifically limited our holding to the facts of that case, thereby rendering it inapplicable to the case at bar. Coe, 217 Mont. at 240, 704 P.2d at 1033.

Joint bank accounts have a special attribute which allows either joint owner, by virtue of a contract with the bank, to acquire complete control over the entire account. Casagranda v.

3

Donahue (1978), 178 Mont. 479, 483, 585 P.2d 1286, 1288. Nonetheless, the rules governing property ownership remain applicable to joint bank accounts. Casagranda, 178 Mont. at 483, 585 P.2d at 1288. If bank policy contradicts Montana law, Montana law governs.

The ownership of personal property held by more than one person is either of joint interests, partnership interests, or interests in common. Section 70-1-306, MCA. Joint interests are defined as follows:

> A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy or when granted or devised to executors or trustees as joint tenants.

Section 70-1-307, MCA. "An interest in common is one owned by several persons, not in joint ownership or partnership." Section 70-1-313, MCA. Every interest created in favor of more than one person is an interest in common unless specifically declared to be a joint interest. Section 70-1-314, MCA.

In the case at bar, Gary Seman and respondent selected a "joint" account by marking the appropriate box on the applicable signature card. Further explanation regarding the significance of owning a joint account failed to appear on the signature card. Applying Montana's statutory scheme regarding ownership of personal property, as set forth above, it appears that Gary Seman and respondent held this account as tenants in common because they failed to designate the account as a joint tenancy and the signature card lacked words of survivorship. However, the use of the word "joint" and nothing further, creates an uncertainty.

To clarify this uncertainty we must determine the intent of

4

the account owners since intent is the determinative factor in this case. To create a joint tenancy with right of survivorship, the requirement is one of clear manifestation of intention, not of particular words. Hennigh v. Hennigh (1957), 131 Mont. 372, 381, 309 P.2d 1022, 1027 (quoting cases). When third party rights are involved, extrinsic evidence is inadmissible if the written agreement is certain and clear. In such cases, the intent of the parties must be gleaned from the signature card alone. Ludwig v. Montana Bank and Trust Co. (1939), 109 Mont. 477, 98 P.2d 377. In Ludwig, this Court found:

> "[W]here such intention is evidenced by a written agreement, . . . this question of intention ceases to be an issue, and the courts are bound by the written agreement. . . . [P]arol evidence is not admissible to change the terms of the legal effect of such a written instrument where it is in no respect uncertain or ambiguous." (citing cases.)

Ludwig, 109 Mont. at 502, 98 P.2d at 389, quoting Hill v. Badeljy (Cal. 1930), 290 P. 637, 640, (followed in Coe, 217 Mont. 234, 704 P.2d 1029; Casagranda, 178 Mont. 479, 585 P.2d 1286; and State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989).

In many prior Montana cases concerning the ownership of joint bank accounts, this Court found it unnecessary to look beyond the signature card to determine the intent of the depositors. In these cases, the signature cards explicitly referred to the owners of the accounts as joint tenants, or they explicitly stated that any money in the joint account was to be paid to either, both, or the survivor upon the other owner's death. See Casagranda, 178 Mont. 479, 585 P.2d 1286; Malek v. Patten (1984), 208 Mont. 237, 678 P.2d 201; and Cole, 122 Mont. 9, 195 P.2d 989. As a result, we have concluded that signing a signature card containing such an

5

agreement demonstrated intent to create a joint tenancy with rights of survivorship since intent to create a joint tenancy was clearly manifested on the face of the agreement.  Casagranda, 178 Mont. at 483, 585 P.2d at 1288.

This case is different.  The signature card in the case at bar provided a method for Gary Seman and respondent to choose the type of account they desired.  They chose a "joint" account.  In addition, the signature card reflects that the account was held in the names of "Gary Seman or Judy Lewis."  The signature card did not evidence a clear intention to create a joint tenancy.  The instant case is identical to Coe without the use of extrinsic evidence.

Extrinsic evidence is only inadmissible if terms in the written agreement are uncertain and the extrinsic evidence is being presented to contradict the terms of the written agreement.  Coe, 217 Mont. at 238, 704 P.2d at 1032.  In Coe, extrinsic evidence was not allowed because its only possible purpose was to contradict the express terms of the agreement.  The express terms of that agreement stated that Mark Coe was an owner of the account with his sister, Tammerly.  To prevent a judgment creditor from levying on the funds in the account, the Coes tried to submit extrinsic evidence to prove that Mark did not own any of the funds in the account.  Clearly, this evidence was intended to contradict the plain meaning of the agreement and therefore, inadmissible.  Accordingly, the only proper evidence before the Court regarding intent of the parties was the signature card.  Since the signature card did not clearly indicate an intent to create a joint tenancy, this Court concluded that Mark and Tammerly owned the account as

*6*

tenants in common, allowing the judgment creditor to levy on Mark's half of the account.

Coe is distinguishable; extrinsic evidence regarding intent was admissible in the instant case because respondent submitted it to supplement, rather than contradict, the uncertain terms of the signature card.  Respondent did not offer this evidence to refute ownership in the account.  Deposition and affidavit testimony of respondent, bank personnel, and the bank vice president was offered to indicate Gary Seman's desire to have the funds in the Seman/Lewis account revert to respondent upon his death.  This evidence merely explains Gary Seman's intent regarding the type of ownership he desired when acquiring this joint account.

As neither party has presented any disputed issues of material fact and the District Court correctly distinguished Coe from the case at bar, the court did not err in granting summary judgment in favor of respondent.

AFFIRMED.

Justice

We concur:

Justices

7

Justice Terry N. Trieweiler specially concurring.

I concur with the opinion of the majority.

I disagree with the conclusion of the dissenters that § 70-1-306, MCA, requires use of the word "tenancy" in order to create a joint ownership in property with rights of survivorship. My interpretation of § 70-1-306, MCA, is that joint forms of ownership must be designated as joint ownership, as opposed to some other form of ownership. That is exactly what the signature card signed by Gary Seman and Judy Lewis did. I am satisfied that the legislature intended nothing so literal as suggested by the dissenters in this case.

However, neither am I in accord with everything that is said in the majority opinion.

I believe that the result arrived at by the majority is required by our earlier decision in *First Westside National Bank v. Llera* (1978), 176 Mont. 481, 580 P.2d 100. In that case, we addressed the form of ownership for an automobile where the certificate of ownership indicated that the owners were "Edith S. Tynes and/or Allen R. Llera." There was no language indicating that the automobile was owned in "joint tenancy." However, we held that:

> [I]t has come to be widely accepted, particularly in the consumer goods industry, that ownership documents which carry the names of two or more persons with the phrase "and/or" does in fact create a joint tenancy estate. Moreover, this Court held in *Marshall v. Minlschmidt* (1966), 148 Mont. 263, 269, 419 P.2d 486, that the names of three owners shown on a recorded cattle brand, joined by the word "or," was in fact a joint tenancy interest in the brand, and therefore of the cattle bearing such brand.

8

Following *Marshall,* therefore, we may assume that in Montana an ownership document showing title in two or more persons **"and/or"** has the effect of creating a joint tenancy estate with right of survivorship.  This applies to personal property, not real estate.  See: § 67-310 R.C.M.  (1947).

*First Westside National Bank,* 580 P.2d at 103.

In this case, the signature card indicated that the owners of the account were "Gary Seman or Judy Lewis."  In addition, the owners made a conscious indication on that card that ownership of the account was "joint."  The owners did more than was required in the *First Westside National Bank* case to establish ownership of this account in the form of a joint tenancy.

An apparently inconsistent result was arrived at in the case of *University of Montana v. Coe* (1985), 217 Mont. 234, 704 P.2d 1029. However, nowhere in the majority opinion of the *Coe* decision is *First Westside National Bank* discussed, overruled, or modified.  The only reference to it is in Justice Weber's dissent where he discusses both the *Marshall* and *First Westside National Bank* cases and then concludes as follows:

The foregoing cases have not been overruled.

Based on the foregoing authority, I conclude that we must class the present bank account as a joint tenancy bank account, with each of the two account holders having all the rights of joint tenants with right of survivorship.

*Coe,* 704 P.2d at 1036-37 (Weber, J., dissenting).

9

I agree. I would follow the *First Westside National Bank* case, and to the extent that the *Coe* case is inconsistent, I would overrule that decision.

_____
                    Justice

Justice Karla M. Gray, dissenting.

I respectfully dissent from the opinion of the majority. I agree with the majority that Gary Seman and Judy Lewis intended to create a joint tenancy in the account. It is my opinion, however, that an appropriate analysis of this case requires the application of statutory requirements rather than rules of contract interpretation.

Section 70-1-307, MCA, is clear: no joint interest exists unless the ownership by several people in equal shares is **"expressly declared in** the . . . transfer to be a joint <u>tenancy</u>." (Emphasis added.) The majority correctly concludes that, the statutory requirements not having been met, Gary and Judy "appear" to have been tenants in common. In my view, the majority should have held at that point that the District Court erred in granting summary judgment to the respondent. The statutory requirement that a joint interest must be expressly declared in the creating instrument to be a joint tenancy could not be more clear. Absent such an express declaration, no joint tenancy can exist.

Inexplicably, the majority verges off on rules of contract interpretation. Finding an **"uncertainty"** on the face of the signature card, it decides it must determine the intent of the account owners and goes on to discuss the admissibility of extrinsic evidence in vintage contract interpretation terms. The result is to ignore the legislature's clearly stated intent as to what is necessary to create a joint interest, as a matter of law,

and to elevate the intent of the parties to an agreement over specific statutory requirements.  I cannot agree.

_____
Justice

Chief Justice J.A. Turnage and Justice Fred J. Weber join in the foregoing dissent of Justice Karla M. Gray.

_____
Chief Justice

_____
Justice

12