No. 93-415

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

JAMES BAKER, Personal Representative
of the Estate of Laura Perrine,

  Plaintiff and Appellant,

 v.

RICHARD BERGER,

  Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,
       In and for the County of Lewis and Clark,
       The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    John F. Lynch, Lynch Law Firm,
    Great Falls, Montana

  For Respondent:

    Gregory J. Hatley, Cure, Borer & Davis,
    Great Falls, Montana

FILED

MAY 03 1994

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: January 20, 1994

Decided: May 3, 1994

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Plaintiff/appellant, James Baker, personal representative of the estate of Laura Perrine, appeals from a judgment of the First Judicial District Court, Lewis and Clark County, denying his motion for summary judgment asking the court to find that as a matter of law, the 1960 property agreement between respondent, Richard Berger, and others is unenforceable; and from the order of the court granting respondent specific performance of the agreement.

Affirmed.

We rephrase the issues as follows:

1.    Is the 1960 agreement an unreasonable restraint on the alienation of the subject property?

2.    Did the District Court abuse its discretion when it granted respondent specific performance of the agreement?

In 1959, respondent and his late wife, Marjorie, purchased a lot on Holter Lake with the plan to build a vacation cabin on the site.  On June 30, 1960, they signed an agreement with his brother Frederick and his wife, Margaret, Harlan and Josephine Mattson, and Pat and Laura Perrine.  Simultaneously, respondent executed three deeds to the couples, which transferred an undivided one-fourth interest in the lot to the three couples, while respondent and his wife retained a one-fourth interest.  The agreement provided that the couples were subject to the following buy-out provision:

> AND WHEREAS, the parties hereto are desirous of providing for the disposition of the interest of each in said property, in the event of the death of both of the joint tenants of such parties, and restricting the sale of the interest of any of the parties, except to each

2

other, it being the intention and desire of each and all of the parties hereto that said property shall not be sold to or otherwise disposed of by any of them except to the others, as hereinafter provided, and that so far as possible the ownership of said property shall remain in the present group or those remaining.

. . . .

. . . [I]f a sale is made by any set of the parties hereto, the remaining set or sets of the parties hereto shall purchase such interest for the sum of One Thousand ($1,000.00) Dollars; that each set of the remaining parties shall purchase said share or interest so offered for sale, and contribute equally thereto; SAVE AND EXCEPT that if any set of parties desiring to sell, shall have contributed toward the purchase of the interest of any former set, then the amount so paid shall be added to the One Thousand Dollar price or value hereinabove mentioned.

That upon the death of the surviving joint tenant of any set of parties hereto, the remaining set or sets of the parties hereto shall have the right and privilege, and are hereby given the right and privilege and do hereby obligate themselves to purchase the interest of said deceased in said lands for the sum of One Thousand ($1,000.00) Dollars, for an undivided one-fourth interest, plus a proportionate amount for any additional interest owned by said deceased. [Emphasis added].

The property has not been appraised, but appellant claims that the actual value of the property is estimated at $100,000, making the original share of each party now worth $25,000, and Laura Perrine's current share worth $33,333.33. The District Court found that the parties agree that the property's fair market value is significantly in excess of the $4000 value utilized by the parties in 1960.

The couples built a cabin which they all used as vacation property for many years, and shared in its upkeep and maintenance. During the cotenancy, respondent supplied the maintenance, and periodically submitted itemized statements to the cotenants for

3

their contribution to the costs. Since Laura's death, respondent made substantial improvements to the property, has kept up the property, and since Pat Perrine's death in 1982 or 1983, has paid all the property taxes.

In 1967, Harlan Mattson died and Josephine Mattson sold their interest in the property shortly thereafter to the three other couples for $1000, in accord with the agreement. In about 1978, Margaret Berger died, and in 1979 her husband, Frederick Berger, died. Laura and Pat Perrine did not purchase a half of Frederick and Margaret Berger's one-third interest in the property. The Berger's son, who was the executor of their estate, sold the couple's interest to respondent in 1992. Between 1979 and 1992, Frederick and Margaret Berger's children did not use the property. In 1982 or 1983, Pat Perrine died. In 1984, respondent's wife died. Laura Perrine died in 1990. Respondent is the last surviving cotenant. Appellant is Laura's nephew, as well as the personal representative of her estate.

In 1991, respondent tendered $1334 to appellant for Laura Perrine's one-third interest in the property, pursuant to the agreement, but appellant refused the tender on the basis that the 1960 agreement is unenforceable.

The District Court found that respondent had the right to specifically enforce the purchase provision in the cotenancy agreement, and that upon respondent's re-tender of payment of $1344 to appellant, appellant was ordered to make, execute, and deliver

4

to respondent his personal representative's deed conveying all right, title, and interest in the disputed property.

On August 19, 1993, appellant filed this appeal.

## ISSUE 1

Is the 1960 agreement an unreasonable restraint on the alienation of the subject property?

Appellant argues that the terms and conditions of the 1960 agreement constitute an illegal restraint upon alienation of property, in violation of § 70-1-405, MCA, because the agreement sought only to restrain alienation, not to facilitate an original transfer.

Montana's statute regarding restraint on alienation of real property states that "conditions restraining alienation, when repugnant to the interest created, are void." Section 70-1-405, MCA. In addition, § 28-2-707, MCA, provides that:

> [a] condition in a contract the fulfillment of which is impossible or unlawful within the meaning of part 6 and this part or which is repugnant to the nature of the interest created by the contract is void.

In Edgar v. Hunt (1985), 218 Mont. 30, 33, 706 P.2d 120, 122, we interpreted § 70-1-405, MCA,

> as a statement of the majority common law rule that restraints on alienation, when reasonable, are valid. The question is whether the particular restraint is reasonable under the circumstances. [Citations omitted; emphasis added].

In Edgar, we held that a preemptive fixed price repurchase option in an agreement executed contemporaneously with a deed transferring property did not violate § 70-1-405, MCA. There we set out several

5

factors that may be used in an analysis of whether an agreement's provision restraining alienation was reasonable. We noted that the various factors set out in the Restatement (Second) of Property § 406 cmt. i (1977), may be considered. In addition, we stated that we will consider the intent of the parties contracting for the preemptive right, and whether the particular restraint, or price set thereby, is primarily for the purpose of restraining the alienability of the property. Edgar, 706 P.2d at 122. Moreover, we determined that:

> if the circumstances suggest that the restraint was freely entered into by mutual consent as a normal incident of an equal bargaining relationship in order to promote the original transfer of the property, the scales will tip back towards the reasonableness of the restraint
> . . . .

Edgar, 706 P.2d at 122.

The District Court found that the agreement was reasonable and enforceable. The court stated:

> Even accepting [appellant's] assertion of the huge discrepancy between the fixed price and the present market value of the shares of the property, the intent of the parties in entering into the agreement far outweighs that consideration. This situation is unique in that the restraint on alienation of the property is a material and integral part of the cotenancy arrangement; without that provision, the purpose of the cotenancy agreement would be defeated.

We agree with the District Court that under the circumstances, the restraint on alienation in the 1960 agreement was an integral and material part of the cotenancy arrangement. The restraint provision promoted and facilitated the original transfer of the property.

6

The record is clear that but for the couples' 1960 agreement, executed simultaneously with the deeds, respondent and his wife would have retained all interest in the property. The parties' intent was to share and maintain the cabin on the property with the understanding that they would share close confines among family and friends, not strangers. The couples entered into the agreement by mutual consent as an incident of an equal bargaining relationship which promoted the original transfer of the property and granted each other the right to purchase their respective interests under two conditions. Without the restraint provision, respondent's original plan and the couples' subsequent agreement to the cotenancy arrangement would have been defeated.

In addition, the record shows that the parties included the provision in the agreement to fix the buy-out price of the property at $1000 so as to avoid price negotiations every time one of the surviving spouses died, and to prevent the last living spouse from being forced to buy out the decedent's remaining interest at a price far inflated from his or her own interest in the property.

We hold that the couples' 1960 agreement contains nothing repugnant to the interest created, but rather, provided a reasonable restraint on alienation of the vacation property in accord with § 70-1-405, MCA, and our decision in Edgar.

## ISSUE 2

Did the District Court abuse its discretion when it granted respondent specific performance of the agreement?

7

Appellant argues that the District Court abused its discretion when it granted respondent specific performance of the agreement because the agreement is void and unenforceable against him and Laura's successors. Appellant asserts that: (1) nothing in the agreement restricts the donative or intestacy transfer by a party; (2) they were not parties to the 1960 agreement; (3) the agreement did not contain an express covenant that would justify enforcement of the agreement against them, and Montana law prohibits an implied covenant to sell; and (4) the fixed price contained in the agreement is unreasonable and inequitable because it cannot be applied in a way contrary to statutory authority and an exchange of only $1334 for Laura's ownership rights in the property would work a great injustice on the estate.

The District Court found that as personal representative to Laura Perrine's estate, appellant stepped into her shoes with respect to her legal obligations, and as such, was bound to sell the property pursuant to the buy-out provision in the agreement. (citing §§ 72-3-602, -604, and -613, MCA).

The agreement provided respondent with an enforceable right and privilege, and in fact, an obligation to purchase a decedent's interest in the property without a provision expressly stating that each cotenant or cotenant's estate had a duty to sell the interest.

Appellant's argument that nothing in the agreement restricts the donative or intestacy transfer by a party is without merit. The buy-out provision specifically states that "said property shall not be sold to <u>or otherwise disposed of</u> by any of them except to

8

the others, as hereinafter provided, and that so far as possible the ownership of said property shall remain in the present group or those remaining." [Emphasis added].

The agreement provides that cotenants could buy out a couple's interest by two methods: (1) by way of a voluntary inter vivos sale by a couple to the cotenants for $1000, or the value of a couple's interest after a contribution toward the purchase of the interest of any former couple; or (2) by way of a compulsory buy-out of a surviving spouse's interest at death. As the last of "those remaining" of the surviving spouses, respondent's alternative, pursuant to the agreement, was to buy out Laura's interest in the property, which he had attempted by tendering payment to appellant. Even under the maxim of statutory construction, *expressio unius est exclusio alterius*, (the expression of one thing implies the exclusion of another), the couples' agreement prohibits donative or intestacy transfer of a surviving spouse's interest in the property.

Appellant's argument that he and Laura's successors are not bound by the 1960 agreement because they are not parties to it is likewise without merit. Generally, contracts made by a decedent are specifically enforceable against the decedent's personal representatives, heirs, devisees, and assigns. 81 C.J.S. *Specific Performance* § 31 (1977); Exchange Nat'l Bank v. Sparkman (Colo. 1976), 554 P.2d 1090, 1093; In re Estate of Sharp (Utah 1975), 537 P.2d 1034, 1038. Montana law provides that:

> [w]henever an obligation in respect to real property would be specifically enforced against a particular

person, it may be in like manner enforced against any other person claiming under him by a title created subsequently to the obligation . . . .

Section 27-1-421, MCA. In addition, the Uniform Probate Code authorizes a personal representative to perform the decedent's enforceable contracts to convey or lease land by executing and delivering a deed of conveyance for cash payment of all sums remaining due. Section 72-3-613(3)(a), MCA. As personal representative to the estate of Laura Perrine, the 1960 agreement was enforceable against appellant, who was both authorized and obligated to convey Laura's interest in the property to respondent, as the last surviving cotenant.

Appellant is also mistaken that the agreement is unenforceable because it contains no express covenant requiring any party to sell. Appellant argues by way of semantics. Appellant is misguided to assume that the parties' use of the language "the right to purchase" rather than stating "an obligation to sell" proves that the parties could not obligate a deceased party's estate to sell the decedent's interest, but that could only be implied by creating a mutual right to buy. Such an interpretation of the agreement's buy-out provision would render it meaningless. The decedent's obligation to sell is not found in impermissible extrinsic evidence, as appellant suggests. (citing § 28-2-905, MCA). It follows that where the agreement both obligates and gives "the right and privilege" to the surviving cotenant(s) to purchase the decedent's interest in the property, it logically creates a corresponding obligation on the part of the decedent's estate to

10

sell her interest in the property to the surviving cotenant(s). The buy-out provision obligated the parties to a set of mutual promises--one to buy, and one to sell. See § 28-2-303, MCA. We conclude that the agreement, by its terms, obligated appellant to sell Laura's interest in the property to respondent. The agreement provides respondent with an enforceable right to purchase the decedent's interest in the property.

Finally, appellant argues that the fixed price contained in the agreement is unreasonable, inequitable, and cannot be enforced in equity by the remedy of specific performance. Specifically, appellant claims that application of the remedy of specific performance in this case is inappropriate because: (1) it cannot be applied in a way contrary to statutory authority; and (2) an exchange of only $1334 for Laura's ownership rights in the property would work a great injustice on the estate, presumably where such an amount tendered for Laura's interest is inadequate consideration to justify the transfer based on his estimate of the property's $100,000 fair market value.

We have held that specific performance is an equitable remedy and is a matter of discretion for the trial court. Larson v. Undem (1990), 246 Mont. 336, 342, 805 P.2d 1318, 1323. Specific performance is an appropriate remedy where "the act to be done is such that pecuniary compensation for its nonperformance would not afford adequate relief." Section 27-1-411(2), MCA. In addition, "[i]t is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary

compensation . . . ." Section 27-1-419, MCA. Finally, a party claiming to be entitled to specific performance must have offered to perform. Pond v. Lindell (1981), 194 Mont. 240, 245, 632 P.2d 1107, 1110.

Here, the remedy of specific performance can be applied in a way that is not contrary to statutory law. The act to be done is the transfer of Laura's interest in the property for $1334 to respondent, as the last surviving cotenant, pursuant to the agreement. In this case, pecuniary compensation for the nonperformance of the transfer of Laura's interest in the real property would not afford respondent adequate relief.

It is not clear whether appellant seeks $32,000 in additional consideration, or a donative or intestacy transfer to Laura's interest in the property. Regardless, either result would render the 1960 agreement meaningless. If appellant seeks an additional $32,000 in consideration for Laura's interest, respondent would be denied the right to be free from a forced purchase of a deceased cotenant's interest at an inflated price--a result that flies in the face of the couples' intent. If appellant is claiming that Laura's heirs have received Laura's one-third interest in the property by donative or intestacy transfer, respondent would be denied exclusive enjoyment of the property, as the last surviving cotenant, and potentially faces a forced buy-out from Laura's heirs; both results which are contrary to the couples' intent. Either consequence would not honor the 1960 agreement, and unjustly deny respondent the benefit of his bargain.

12

Appellant argues that $1334 is inadequate consideration for Laura's one-third interest in property supposedly worth $100,000, and thus respondent is not entitled to specific performance. The argument is without merit. The mutual promises in the buy-out provision fixed the buy-out price of a cotenant's interest at $1000, plus any other value paid. The parties had free and equal bargaining powers. Each couple knowingly bargained that they could predecease the other couples, and leave the surviving couple or spouse with full ownership of the property.

Montana law defines good consideration as:

> any benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor is a good consideration for a promise.

Section 28-2-801, MCA. Here, each party to the agreement agreed to confer upon the surviving cotenants, his or her interest in the property upon death. Had Laura Perrine not been a party to the agreement, respondent, as the last surviving cotenant and promisor, was not otherwise lawfully entitled to her interest upon her death, in exchange for $1334. Because Laura was a party to the contract, and is now deceased, respondent is entitled to the benefit of the bargain. No new consideration is now required as a result of the increase in the fair market value of the property. Respondent will receive nothing more than for what he originally bargained.

In addition, in accord with Montana law, respondent offered to perform the buy-out when he tendered $1334 to appellant--the amount

13

of Laura's interest in the property. The fact that the property now may be worth $100,000 is irrelevant.

We hold that the District Court did not abuse its discretion when it granted respondent specific performance.

Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

14

May 3, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

John F. Lynch
Lynch Law Firm
P.O. Box 2265
Great Falls, MT 59403

Gregory J. Hatley
Cure, Borer & Davis, P.C.
P. O. Box 2103
Great Falls, MT 59403-2103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy