T.C. Memo. 2001-14


UNITED STATES TAX COURT


ESTATE OF THEODORE C. CHEMODUROW, DECEASED,
GAIL C. WILLIAMS, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1451-00.                Filed January 23, 2001.


R has moved for a partial summary adjudication
that the value of certain real and personal property is
includable in the gross estate.  P avers that the
property is not so includable because the decedent sold
it to his daughter prior to his death.  Relying on two
State court actions finding no sale to the daughter, R
argues that the doctrine of collateral estoppel, or
issue preclusion, precludes such a finding.  We agree
with R that P is estopped from litigating ownership of
the property.  P having set forth no other basis for
P's assignments of errors, partial summary adjudication
in R's favor is appropriate.
    <u>Held</u>:  R's motion for partial summary judgment
shall be granted, and the value of the property is
includable in the gross estate.

Dudley M. Lang and R. Wicks Stephens II, for petitioner.

Frederick J. Lockhart, Jr., for respondent.

MEMORANDUM OPINION

HALPERN, Judge:  This case involves the Federal estate tax. The decedent is Theodore C. Chemodurow (sometimes, Theodore).  By notice of deficiency dated December 1, 1999 (the notice), respondent determined a deficiency in Federal estate tax of $2,648,640, an addition to tax for failure to file tax return of $132,432 under section 6651(a)(1), and an accuracy-related penalty of $529,728 under section 6662(a).  The case is before us on respondent's motion for partial summary judgment (the motion). Petitioner objects.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect at the time of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

### Motion for Summary Judgment

A summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b).  A

summary judgment may be made upon part of the legal issues in controversy.  See Rule 121(a).

Grounds

Respondent asks for summary adjudication in his favor that, at the time of decedent's death, decedent had an interest in certain real and personal property (sometimes, the property), the value of which, by virtue of such interest, is includable in the gross estate.  Respondent's grounds are that the ownership of the property was previously litigated by Gail C. Williams (sometimes Gail or Ms. Williams), individually, and as personal representative of decedent's estate, and that a final determination was reached adverse to Ms. Williams' position, as executor, in the instant case, which affords respondent the defense of collateral estoppel and precludes petitioner from relitigating ownership of the property.

Facts on Which We Rely

In support of the motion, respondent has filed the declaration of Frederick J. Lockhart, Jr., respondent's attorney in this case (the Lockhart declaration).  Attached to the Lockhart declaration is a copy of the United States Estate (and Generation-Skipping Transfer) Tax Return, Form 706 (the Form 706), filed on account of decedent's death, and copies of various documents filed in two State court actions (which we detail infra).  In support of petitioner's opposition to the motion, petitioner has filed the declaration of Ms. Williams (the

Williams declaration).  We rely on those declarations to the extent that they are undisputed.  In particular, we rely on the Form 706 and State court documents attached to the Lockhart declaration, since their authenticity has not been disputed by petitioner.  We also rely on two attachments to the motion, which petitioner also relies on.  Finally, we rely on certain uncontested averments in the pleadings.[1]  Principally, the facts on which we rely to decide the motions are as follows.

Decedent

Decedent died on January 8, 1996.  His domicile at the time of his death was in Yellowstone County, Montana.

Executor

Ms. Williams (nee Chemodurow), personal representative of the estate of decedent, signed the petition.  Her address, as shown in the petition, is in Bozeman, Montana.

Form 706

Schedule A to the Form 706 (Schedule A) is a schedule requiring a description of all real estate owned by the decedent.  The following item is described on Schedule A:  "80 acres in Gallatin County, Montana near Bozeman" (the subdivision land).  Schedule A does not include any description of approximately 390

---

[1]  In petitioner's memorandum of law in opposition to the motion, petitioner states petitioner's reliance on "the Protest of Petitioner filed herein".  The record contains no such document, nor does petitioner's counsel's cover letter, dated Dec. 12, 2000, enclosing various documents for filing, contain reference to any such document.

acres of ranch land adjacent to the subdivision land and constituting the greater part of what was known as the Abagail ranch (the Abagail ranch).

There is no accompanying schedule to the Form 706 that describes certain personal equipment used in connection with the Abagail ranch (the ranch equipment).

Notice

Among the adjustments giving rise to respondent's determination of a deficiency in Federal estate tax are adjustments increasing the value of the gross estate for the value of the Abagail ranch and the ranch equipment. Respondent made those adjustments on the basis that decedent owned the Abagail ranch and the ranch equipment on the date of his death.

Petition

Among petitioner's assignments of error in the petition are the following:

(a) The Commissioner erroneously determined that the gross estate includes the value of the land, improvements and water rights of the real property known as the Abagail Ranch, which real property was sold to the decedent's daughter on November 16, 1981.

(b) The Commissioner erroneously determined that such sale to the decedent's daughter was null and void.

* * * * * * *

(e) The Commissioner erroneously determined that the gross estate includes the value of farm machinery and equipment which was sold to the decedent's daughter on or before August 18, 1995.

Among the facts upon which petitioner bases the assignments of error are the following:

On November 16, 1981, * * * [decedent] sold the Abagail Ranch to his daughter Gail Chemodureau * * *.

From November 16, 1981, until August 30, 1995 * * * title to the Abagail Ranch remained in the names of * * * [decedent] and his wife * * *. On August 30, 1995 * * * [decedent and his wife] executed and delivered a Warranty Deed conveying Abagail Ranch to Gail. Because of a minor error in such deed * * * [decedent and his wife] executed and delivered a corrected Warranty Deed dated December 20, 1995. * * *

Gail is the true owner of the Abagail Ranch * * * . The Abagail Ranch is not an asset of the Estate and its value is not properly included in the gross estate for estate tax purposes.

* * * * * * *

In conjunction with formalizing the sale of the Abagail Ranch to Gail * * * [decedent] executed and delivered to Gail a General Assignment of all farm equipment and machinery located at the Abagail Ranch. Consequently, Gail is the true owner of the equipment; it is not an asset of the Estate; and its value is not properly included in the gross estate for estate tax purposes.

State Court Actions

Relevant to this proceeding are two actions brought in the Montana Eighteenth Judicial District Court, Gallatin County, Montana (the State court). The first action is styled "CYNDI JAKUBEK and PAUL JAKUBEK, Plaintiffs, vs. GAIL SUZANN CHEMODUREAU aka GAIL WILLIAMS individually and in her capacity as Personal Representative of the ESTATE OF THEODORE CHEMODUROW, Defendants", Cause No. DV 96-60 (Cause No. DV 96-60). Cause No. DV 96-60 was initiated by complaint (the Second Amended Complaint and Demand

for Jury Trial in Cause No. DV 96-60 (second amended complaint) is dated February 12, 1997). Ms. Williams answered and made a counterclaim (the answer and counterclaim). The second action is styled "GAIL SUZANN CHEMODUREAU WILLIAMS, Plaintiff, vs. GEORGIA DARIA HOHENSEE, CYNTHIA JAKUBEK, PAUL JAKUBEK, the heirs et al., Defendants", Cause No. DV 96-109 (Cause No. DV 96-109). Cause No. 96-109 was initiated by complaint filed April 1, 1996 (the complaint). A cross-complaint (the cross-complaint) was brought in Cause No. DV 96-109, styled "GEORGIA DARIA HOHENSEE, Plaintiff, vs. GAIL SUZANN CHEMODUREAU, et al., Defendants."

Cause No. DV 96-60 involves several causes of action based upon agreements plaintiffs claim they entered into with decedent, including an agreement entitled "LIVESTOCK AGREEMENT" (the livestock agreement). Among the averments made by plaintiffs in support of their causes of action are that (1) by the livestock agreement, decedent had (A) leased the Abagail ranch to them and (B) agreed to provide and maintain necessary equipment (i.e., the ranch equipment) for ranch operations, and (2) Ms. Williams, individually and as a personal representative of decedent's estate, had breached those agreements. Among the counts in Ms. Williams' counterclaim are counts alleging that plaintiffs are unlawfully in possession of, and have refused to return to Ms. Williams, the ranch equipment.

In Cause No. DV 96-109, Ms. Williams averred that she was the sole owner of the Abagail ranch and sought to quiet her title

as against the claims of the identified defendants and others. Among defendants identified in the complaint are "the heirs and devisees of [decedent]". With respect to unidentified defendants, the complaint avers that there might be persons unknown to Ms. Williams claiming, or who might claim, an interest in the Abagail ranch, adverse to her interest as the fee simple holder of the title to the property. The complaint states that each and all of the identified defendants, as well as any unknown persons, "are without any right, title, estate, or interest in, or lien or encumbrance upon, the Property [Abagail Ranch], and therefore have no valid estate, right, title, or interest in or to, or lien or encumbrance upon, the Property or any portion thereof." By the cross-complaint, cross-complainant set forth a cause of action against Ms. Williams individually, and in her capacity as personal representative of the estate of decedent, for specific performance of a land transaction involving the Abagail ranch.

Cause Nos. 96-60 and 96-109 were consolidated and a nonjury trial was held in each, from July 14 through July 18, 1997, in Cause No. 96-60, and on November 12 and 13, 1997, in Cause No. 96-109.

On April 8, 1998, in connection with Cause No. 96-109, the State court issued its "Findings of Fact, Conclusions of Law and Order" (the Cause No. 96-109 report), together with attendant Judgment (the Judgment in Cause No. 96-109). Two conclusions

reached by the State court were that the Abagail ranch was property includable in the probate estate of decedent and that Ms. Williams held title to the ranch in constructive trust for the estate of decedent. Among the conclusions of law reached by the State court were the following:

> 4. The first issue to be resolved is ownership of the Abagail Ranch. Gail claims to have purchased the ranch in 1981 from Theodore. There was no evidence presented that Theodore agreed to sell the ranch to Gail in 1981 or that he considered the ranch sold to Gail. In fact, the evidence demonstrated that he considered the ranch as his own as reflected in his 1992 correspondence with Musser and the 1995 Will. Gail presented no evidence of payment for the ranch – no checks, credit card bills or any other written evidence of payment to Theodore from 1981 to the date of trial. The Court concludes that Gail did not purchase any portion of the Abagail Ranch at any time.

> 5. Gail also claims that she acquired the Abagail Ranch in 1995 by virtue of the claimed payments over the years. In support of this claim, Gail produced two deeds describing the identical portion of the Abagail Ranch and both from Theodore and his wife Bette to Gail – one dated August 1995 and the other December 1995 * * * . The deeds were ostensibly introduced at trial to reflect a transfer of ownership to Gail in 1995. Gail admitted that the August deed was defective and had to be redone with the December deed. The August and December 1995 deeds both indicate that all of the consideration had been provided, but Gail admitted that at the time of Theodore's death (January 1996), she owed Theodore as much as $40,000-$60,000.

> 6. There was no credible evidence that Gail provided Theodore with any consideration for any portion of the Abagail Ranch at any time. It was within Gail's ability to produce some documentary evidence reflecting any payment for the ranch if it existed. In light of this absence of what should have been available evidence, the Court concludes that no payments were ever made to Theodore by Gail for any portion of the Abagail Ranch. In addition, there was nothing in Theodore's 1995 tax return, prepared at

Gail's direction, or any of his other tax returns introduced at trial, that reflected any payments from Gail to Theodore for the Abagail Ranch.

7.    The Court concludes that Gail provided no monetary consideration for the Abagail Ranch, as claimed by Gail.  The Court also concludes that love and affection between Theodore and Gail, if any, is not considered valuable consideration for the conveyance.  Baker Nat. Bank v. Lestar, 153 Mont. 45, 57; 453 P.2d 774, 781.  Without consideration and absent a gift theory, the attempt to transfer ownership of the Abagail Ranch to Gail in 1995 is void.  Eliason v. Eliason (1968), 151 Mont. 409, 417; 443 P. 2d 884, 889.

8.    With regards to a gift theory, there was no evidence presented at trial that the attempted transfer from Theodore to Gail in 1995 was intended to be a gift.  In order for there to be a valid inter vivos gift, Theodore must have had donative intent.  State Board of Equalization v. Cole (1948), 122 Mont. 9, 14; 195 P.2d 989, 992.  Gail did not argue in her pleadings or at the time of trial that Theodore ever intended to gift her any portion of the ranch.  Rather, she said she was to pay for it and Theodore "intended" to sell it to her.

9.    Because there was no consideration provided by Gail for the ranch and gift is not an issue in this case, the Court concludes that the August and December 1995 deeds are null, void and subject to cancellation.  Eliason, 151 Mont. at 417.

10.    In light of the fact that there was no valid transfer to Gail and no gift, that portion of the Abagail Ranch subject to the quiet title action should be a part of the Estate of Theodore Chemodurow.  Gail may have title to the property by virtue of one of two deeds, but as a matter of equity, Gail holds title to the property in constructive trust for the Estate of Theodore Chemodurow.

*    *    *    *    *    *    *

In this case, Gail is subject to an equitable duty to convey it to the Estate until such time as all of Theodore's affairs are settled and the probate court permits her to distribute the estate according to Theodore's last Will.  To permit Gail to keep the ranch

without having paid for it would unjustly enrich her at the expense of Georgia, the Jakubeks and perhaps other creditors, including the IRS, who are looking to the Estate to satisfy Theodore's outstanding obligations, debts and judgments. This conclusion does not preclude Gail from acquiring an interest in the Abagail Ranch per Theodore's last Will, if appropriate, once this case and the probate of Theodore's estate have been resolved.

11. Consequently, the Court concludes that portion of the Abagail Ranch that Gail seeks to quiet title is held in constructive trust for the Estate of Theodore Chemodurow. Except as discussed below, it is for the probate court to determine what, if any, portion of the Abagail Ranch should be transferred to Gail under Theodore's last Will.

The Judgment in Cause No. 96-109 incorporated the order paragraphs from the Cause No. 96-109 report. Among the order paragraphs incorporated was the following:

1. Gail Williams' request to quiet title in that portion of the Abagail Ranch identified in the Complaint is DENIED and said property is now held by Gail Williams in constructive trust for the benefit of the Estate of Theodore Chemodurow.

The Judgment in Cause No. 96-109 (and, likewise, the Judgment in Cause No. 96-60, see infra), inclusive of incorporated Order (in Cause No. 96-109, only), became final as a result of a Stipulation to Dismiss Appeal and Cross Appeal, with Prejudice, dated October 6, 1998, and the Order of the State court approving the dismissal, dated October 27, 1998. Notices of Satisfaction of Judgment were filed, and the State court declined to dismiss the Judgments.

Also, on April 8, 1998, in connection with Cause No. 96-60, the State court issued its "Findings of Fact, Conclusions of

Law". An attendant Judgment was issued on April 14, 1998 (the Judgment in Cause No. 96-60). One conclusion reached by the State court was that the ranch equipment was includable in the probate estate of decedent. Among the findings of fact made by the State court were the following:

19. The parties [decedent and the Jakubeks] negotiated, drafted and signed a Livestock Agreement [(the livestock agreement)] in February 1993 * * *

* * * * * * *

35. The Jakubeks also contend that Gail breached the Agreement [the livestock agreement] by refusing to provide necessary machinery and equipment to operate the ranch and maintain a cow/calf operation. The necessary machinery and equipment at issue was a ranch truck and ranch tractor. Under the Livestock Agreement Theodore specifically agreed:

. . . to provide and maintain necessary equipment for ranch operation, cattle, pasture and hay ground. To provide animal health for cows and their calves, to include; veterinary services, vaccines, and supplies, pasture, hay, straw and feed supplements.

* * * * * * *

39. As for the truck, Gail initially promised to make the payments on the truck and tractor. (P. Ex. 24). Later she claimed that she could not make the payments because the Estate was without the funds. Later still she claimed that she was not responsible for making the payments on the truck because the truck was sold to "Abagail Ranch, Inc." and there was no such entity. She also claimed she did not need to make payments on the truck because of a claimed forged signature on the sales documents. * * * Nevertheless, she demanded that the truck be returned to her as an asset of the Estate * * * and claimed to own the tractor as of August 1995. * * *

40. Gail claimed to have purchased the ranch machinery in August of 1995 and produced a document

which she claimed reflected the transfer from Theodore, including the tractor. * * *  Yet, there was nothing presented at trial to indicate that she paid anything for the machinery.  The transfer document submitted by Gail consists of three pages, the final two being prepared by Cyndi.  Cyndi testified that the two final pages had not been prepared until late September or early October of 1995.  This is supported by Def. Ex. 509C which is the third page of Def. Ex. 509B except with a date of October 1995 at the bottom.  Gail's claim that Def. Ex. 509B was created on or before August 30, 1995 is inconsistent with the date on Def. Ex. 509C and Cyndi's testimony.

* * * * * * *

69.  As for the unlawful possession of the truck and machinery and equipment, Gail at first claimed the personal property belonged to the Estate and then they belonged to her in accordance with an assignment dated August 30, 1995. * * *  Theodore, however, still considered the property his as late as September of 1995 because he gave Paul the back hoe to use as a trade in, an item that Gail claims was transferred to her in August.  * * *

Among the conclusions of law reached by the State court were the

following:

3.  The Livestock Agreement is a valid contract as all essential elements to a contract are present, namely, identifiable parties capable of contracting, their consent, lawful object and consideration.  §28-2-102, MCA; Klawitter v. Dettmann, (1994), 268 Mont. 275, 280, 886 P.2d 416, 419.

4.  As reflected in the Livestock Agreement, the intent of the parties was to make it binding upon their respective heirs, personal representatives and assigns. Theodore's Last Will and Testament also instructs his personal representative to pay all debts.  (Pl. Ex.1). The Livestock Agreement is binding upon Gail as Theodore's personal representative.  See Baker v. Berger (1994), 265 Mont. 21, 28, 876 P.2d 940, 944.

* * * * * * *

- 14 -

17. As personal representative of the Estate, Gail breached the Livestock Agreement by (i) refusing to pay any of the expenses of the cattle; (ii) letting the truck and tractor be repossessed and not replacing the same; and (iii) attempting to evict the Jakubeks from the property in early 1996.

The Judgment in Cause No. 96-60 included, among others, the following order:

Judgment is hereby entered against Gail Williams, individually and in her capacity as personal representative of the Estate of Theodore Chemodurow, and in favor of Cyndi and Paul Jakubek on each and every counterclaim brought by Ms. Williams in DV 96-60.

## Discussion

### I.  Introduction

The Federal estate tax is imposed on the transfer of the taxable estate.  See sec. 2001.  The value of the taxable estate is derived from the value of the gross estate.  See sec. 2051. The value of the gross estate includes the value of all property to the extent of the decedent's interest therein at the time of his death.  See sec. 2033.  We look to State law to interpret interests and rights.  See Tracy v. Commissioner, 70 T.C. 397, 402 (1978); cf. Helvering v. Stuart, 317 U.S. 154, 161 (1942). As relevant to this proceeding, petitioner assigned error to respondent's determinations that, at the time of his death, decedent had an interest in the Abagail ranch and the ranch equipment.  In support of those assignments, petitioner averred that, prior to decedent's death, decedent had sold or otherwise transferred the property to Ms. Williams, who, at the time of

decedent's death, was the "true owner" of the property. Petitioner avers no other facts that would support the assignments of error. Therefore, if petitioner is estopped from claiming that, prior to decedent's death, decedent had sold or otherwise transferred the property to Ms. Williams, petitioner has raised no factual issue with respect to the assignments of error, and we may resolve those assignments as a matter of law.

## II.   The Doctrine of Issue Preclusion

The doctrine of issue preclusion, or collateral estoppel, provides that, once an issue of fact or law is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  Montana v. United States, 440 U.S. 147, 153 (1979) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979)).  Issue preclusion is a judicially created equitable doctrine the purposes of which are to protect parties from unnecessary and redundant litigation, to conserve judicial resources, and to foster certainty in and reliance on judicial action.  See, e.g., id. at 153-154; United States v. ITT Rayonier, Inc.,
627 F.2d 996, 1000 (9th Cir. 1980).  In Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990), we set forth the following five conditions that must be satisfied

prior to application of issue preclusion in the context of a
factual dispute (the Peck requirements):

(1) The issue in the second suit must be identical in
all respects with the one decided in the first suit.

(2) There must be a final judgment rendered by a court
of competent jurisdiction.

(3) Collateral estoppel may be invoked against parties
and their privies to the prior judgment.

(4) The parties must actually have litigated the issues
and the resolution of these issues must have been
essential to the prior decision.

(5) The controlling facts and applicable legal rules
must remain unchanged from those in the prior
litigation. [Citations omitted.]

Even if the Peck requirements are satisfied, however, we
have broad discretion to determine when issue preclusion should
apply, and we may refuse to apply it where, for instance, it is
to be applied offensively, and the party against whom it is to be
applied had little incentive to defend in the first action or
where the second action affords the party procedural
opportunities unavailable in the first action that could readily
cause a different result.  See Parklane Hosiery Co. v. Shore, 439
U.S. 322, 330-331 (1979); see also McQuade v. Commissioner, 84
T.C. 137, 143 (1985).

In considering respondent's position that preclusive effect
attaches to the findings of the State court, we inquire whether
the courts of Montana would accord such findings preclusive
effect.  See 28 U.S.C. sec. 1738 (2000) (the records and judicial

proceedings of a State shall have the same full faith and credit in every court within the United States as they have in the courts of the State from which they are taken); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 482 (1982) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so", quoting Allen v. McCurrey, 449 U.S. 90, 96 (1980)); Bertoli v. Commissioner, 103 T.C. 501, 508 (1994). The doctrine of collateral estoppel is recognized in the courts of Montana. E.g., Rafanelli v. Dale, 971 P.2d 371, 373 (Mont. 1998) ("The doctrine of collateral estoppel bars a party against whom the claim is asserted or a party in privity with the earlier party, from relitigating an issue which has been decided in a different cause of action."). The Supreme Court of Montana applies a three-part test to determine whether collateral estoppel bars litigation: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party in privity with a party to the prior litigation? See id. at 373-374. Although the three-part test applied by the Supreme Court of Montana does not specifically recognize the fourth and fifth Peck requirements (actual litigation of an issue whose resolution was essential to prior case and no change in controlling facts and applicable legal

rules), we believe that those requirements are inherent in Montana's three-part test.  Since the parties have couched their arguments in terms of the <u>Peck</u> requirements, we shall respond accordingly.

III.  <u>Discussion</u>

A.  <u>Issue Preclusion</u>

1.  <u>The Abagail Ranch</u>

Cause No. 96-109 is an action brought by Ms. Williams to quiet title to the Abagail ranch.  Such actions are provided for by Mont. Code Ann. ch. 28 (1999) (Quieting Title to Real Property).  In pertinent part, Mont. Code Ann. sec. 70-28-101 (1999) provides:

> <u>Quiet title action authorized</u>.  An action may be brought * * * by any person * * * claiming title to real estate against any person or persons, both known and unknown, who claim or may claim any right, title, estate, or interest therein or lien or encumbrance thereon adverse to plaintiff's ownership * * * for the purpose of determining such claim or possible claim and quieting the title to said real estate.

In pertinent part, Mont. Code Ann. sec. 70-28-107 (1999) provides:

> the court in which such action is tried shall have jurisdiction to make a complete adjudication of the title to the lands named in the complaint * * *, including jurisdiction to direct:
>
> *     *     *     *     *     *     *
>
> (d)  the doing of any * * * act of a personal nature necessary to give effect to the rights of the respective parties to such action, as the same may be adjudicated by the court.

Among the parties defendant in Cause No. 96-109 are "the heirs and devisees of [decedent]" and all other persons "known or unknown" claiming an interest in the Abagail ranch.

Among Ms. Williams' prayers for relief is the following:

> That it be decreed and adjudged by this court that the Defendants and each and all of them * * * have no right, title, estate, or interest in or to, or lien or encumbrance upon, the * * * [Abagail Ranch], and that the Plaintiff is the sole and lawful owner thereof in fee simple absolute, by and through good and valid title thereto.

The State court determined that, notwithstanding that title to the Abagail ranch may have appeared in the name of Ms. Williams, any title she held was held in constructive trust for the estate of decedent. In particular, the State court found: "Gail did not purchase any portion of the Abagail ranch at any time." Based on that finding, the State court concluded that, for lack of consideration: "[T]he attempt to transfer ownership of the Abagail ranch to Gail in 1995 is void", and "the August and December 1995 deeds are null, void and subject to cancellation". The State court also concluded: "[T]hat portion of the Abagail Ranch that Gail seeks to quiet title is held in constructive trust for the Estate of [decedent]."[2] The State court's findings and conclusions of law directly contradict

---

[2] The State court imposed the following duty upon Gail: "Gail is subject to an equitable duty to convey it [the Abagail Ranch] to the Estate until such time as all of * * * [decedent's] affairs are settled and the probate court permits her to distribute the estate according to * * * [decedent's] last Will."

Ms. Williams' averments in the complaint that: "Plaintiff is the sole owner of the Property [Abagail Ranch]", and "Plaintiff has obtained her ownership rights in the Property by operation of law and warranty deed." Ms. Williams' prayers for relief (including the prayer set forth above) were denied. Moreover, the State court's findings and conclusions of law directly contradict petitioner's averments in this case: "On November 16, 1981, * * * [decedent] sold the Abagail Ranch to his daughter Gail Chemodureau", and "Gail is the true owner of the Abagail Ranch". Respondent has satisfied the first of the Peck requirements; the identical issue was decided in the first suit (Cause No. 96-109) as is raised here, viz., whether decedent sold the Abagail ranch to Ms. Williams.

Respondent has also satisfied the fourth of the Peck requirements; ownership of the Abagail ranch was actually litigated and the answer to that question was essential to the result in the first suit (Cause No. 96-109), i.e., that Ms. Williams held the Abagail ranch only as a constructive trustee for the benefit of the "Estate of [decedent]".

The Judgment in Cause No. 96-109 was entered, became final, and was satisfied. Petitioner has failed to show that the controlling facts or applicable law have changed since those events occurred. Thus, respondent has satisfied the second and fifth Peck requirements. Since petitioner does not challenge the third Peck requirement, viz., whether petitioner is a party, or

in privity to a party, to the prior judgment, we conclude that it is satisfied. Respondent has, therefore, satisfied all of the Peck requirements.

## 2. The Ranch Equipment

In Cause No. 96-60, plaintiffs claimed that, by the livestock agreement, decedent leased to them the Abagail ranch and, in connection with that lease, agreed to provide and maintain the ranch equipment for their use. The State court found that the livestock agreement was a valid contract, and the intent of the parties to the livestock contract was to make it binding on their respective heirs, personal representatives, and assigns (including Ms. Williams, as decedent's personal representative). Plaintiffs claimed that Ms. Williams, "individually and as personal representative of the Estate [of decedent]", had breached the livestock agreement specifically, that provision of the agreement by which decedent agreed to provide and maintain the ranch equipment for plaintiffs' use. In the answer and counterclaim, Ms. Williams averred that she owned the ranch equipment. She prayed for a judgment on her counterclaim that, among other things, "the Plaintiffs return to the Defendant the possession of the Truck * * * [and] tractor and other farm and ranch equipment unlawfully held by the Plaintiffs". The State court found that, with respect to the ranch equipment: "[T]here was nothing presented at trial to indicate that she [Ms. Williams] paid anything for the

machinery." The State court entered judgment against Ms. Williams, and in favor of the plaintiffs, on every count in her counterclaim.

For substantially the same reasons as with the Abagail ranch, we conclude that the Peck requirements are satisfied with respect to the ranch equipment. Issues of fact were decided by the State court following a trial. The State court rejected Ms. Williams' claim that she (rather than the estate) owned the ranch equipment. That is the same issue before us. Resolution of that issue was essential to the outcome reached by the State court. The Judgment in Cause No. 96-60 was entered, became final, and was satisfied. Petitioner has failed to show that the controlling facts or applicable law have changed since those events occurred. Petitioner does not question whether petitioner is a party, or in privity to a party, to the prior judgment. Respondent has, therefore, satisfied all of the Peck requirements.

### 3. Exercise of Discretion

Petitioner argues that we should exercise our discretion to preclude respondent's claim of estoppel. First, petitioner argues that Ms. Williams did not have the incentive to defend vigorously the issue of ownership of the Abagail ranch in the State court. In the Williams declaration, Ms. Williams states:

> [DV 96-109] was a quiet title action which I commenced
> for the sole purpose of removing as a lien against the

Abagail Ranch a mortgage securing a note * * * held by Georgia Hohensee.  * * *

* * * * * * *

At no time during the trial of the consolidated Montana cases did I ever believe that I was litigating title to the Abagail Ranch in any manner which was intended to put at issue as against the whole world that I was the owner of the ranch based upon my 1981 agreement with my father to purchase the ranch and my subsequent payments therefor.  * * *

Petitioner claims:  "The worst possible outcome of the 1996 Action for Gail Williams was that:  (a) seven acres of an almost 400 acre ranch would go to Georgia's estate; (b) the Jakubeks would indeed have a valid lease (that would soon expire); and (c) her quiet title action would be denied because of this.  None of these possible outcomes are particularly onerous."

Petitioner ignores that, in Cause No. 96-109, the caption to the complaint (the caption) includes, as defendants:

all persons known or unknown claiming or who might claim any right, title, estate, or interest, or lien or encumbrance upon the real property described in the Complaint [Abagail Ranch] or any portion thereof, adverse to Plaintiff's ownership or any cloud on Plaintiff's title thereto whether such claim or possible claim be present or contingent, including any of dower, inchoate or accrued * * *.

Petitioner's claim that Cause No. 96-109 was limited to determining Ms. Williams' rights as against only the estate of Georgia Hohensee is belied by the caption and averments of the complaint.  Moreover, Mont. Code Ann. sec. 70-28-104(2) (1999) provides:

(2) If the plaintiff shall desire to obtain a complete adjudication of the title to the real estate described in the complaint, he may name as defendants all known persons who assert or who might assert any claim * * * and may join as defendants all persons unknown who might make any such claim by adding in the caption of the complaint in such action the words "and all other persons, unknown, claiming or who might claim any right, title, estate, or interest in or lien or encumbrance upon the real property described in the complaint adverse to plaintiff's ownership or any cloud upon plaintiff's title thereto, whether such claim or possible claim be present or contingent."

The caption contains language substantially identical to that set forth in Mont. Code Ann. sec. 70-28-104(2) (1999). Moreover, Mont. Code Ann. sec. 70-28-107 (1999), quoted <u>supra</u>, establishes the jurisdiction of the trial court to make a complete adjudication of the title to the Abagail ranch. We cannot escape the conclusion that, by filing the complaint, Ms. Williams placed at risk her interest in the Abagail ranch as against <u>all</u> parties, known and unknown.

Certainly, the State court recognized that Cause No. 96-109 involved rights other than those asserted by the estate of Georgia Hohensee and the Jakubeks. The State court found: "To permit Gail to keep the ranch without having paid for it would unjustly enrich her at the expense of Georgia, the Jakubeks, and perhaps other creditors, including the IRS, who are looking to the Estate to satisfy Theodore's outstanding obligations, debts and judgments." Ms. Williams instigated Cause No. 96-109, and, initially, she set the boundaries of the controversy, which brought into question her ownership of the Abagail ranch, as

against not only the estate of Georgia Hohensee and the Jakubeks but also anyone else claiming an interest in the property. Petitioner has failed to prove that Ms. Williams did not have the incentive vigorously to defend her ownership of the Abagail ranch.

Second, petitioner argues that petitioner has better procedural opportunities in this Court than Ms. Williams had in the State court.  In the Williams declaration, she states:

> During the trial of the consolidated Montana cases, the court refused to admit important evidence which I believe supported my ownership of the Abagail Ranch. As I understood it, the reason for the refusal to admit the supporting evidence was that my attorney in this action had failed to produce that evidence during the discovery stage of the cases because he thought it was unnecessary.

In Cause No. 96-109, the State court found:

> At trial, Gail produced an alleged agreement with Theodore for the Abagail Ranch and Lot #3 dated in August of 1995.  The agreement for the 400 acres was not listed on Gail's list of exhibits in the Pretrial Order nor was it identified by Gail in her answers to the discovery requests.  Gail marked the putative agreement for the 400 acres as Def. Ex. 510 in DV 96-60 and it was refused, but another agreement for land in the Subdivision had been admitted as Def. Ex. 510A.  In DV 96-109, Gail switched the exhibit labels on the exhibits and attempted to introduce the 400 acre agreement as Def. Ex. 510A.  The 400 acre agreement was again rejected.  While the Court eventually admitted the document on other grounds, the Court does not find this late discovered 400 acres agreement to be a credible or authentic document or one of which the defendants in DV 96-109 had adequate notice. Therefore, the Court considers it of no consequence.

We assume that the document referred to in the court's finding is the document petitioner refers to.  The short answer

is that it was admitted into evidence in Cause No. 96-109, contrary to petitioner's claim. The State court's extensive findings of fact in Cause Nos. 96-60 and 96-109 reveal that Ms. Williams was afforded a full and fair opportunity to present all evidence in support of her various claims.

We shall not exercise our discretion to preclude respondent's claim of estoppel.

### B. Conclusion

Petitioner is precluded from claiming that, prior to decedent's death, decedent had sold or otherwise transferred the property to Ms. Williams.

### IV. Summary Judgment

As stated, petitioner has raised no factual issue with respect to the assignments of error, other than that, prior to his death, decedent had sold or otherwise transferred the property to Ms. Williams. Petitioner is precluded from making such a showing. Petitioner has not questioned the application of section 2033 or any other provision of the Federal estate tax. Petitioner, therefore, is left with no basis for assigning error to respondent's determination of a deficiency based on the inclusion of the value of the property in the gross estate. Petitioner's assignments of error in that regard are, therefore, without merit. We shall grant the motion.

<u>An appropriate order</u>

<u>will be issued</u>.